## GREEN et al. v. FARMERS & MERCHANTS STATE BANK et al.

### No. 4681.

Court of Civil Appeals of Texas. Amarillo.

Nov. 30, 1936.

Rehearing Denied Jan. 4, 1937.

H. W. Wallace, of Cuero, for appellants.

Marcus Schwartz, of Hallettsville, for appellees.

HALL, Chief Justice.

This suit was instituted by Wm. D. Green, for himself and as independent executor of the estate of his deceased father, William Green, joined by O. Buescher as trustee for the stockholders of the First National Bank of Moulton, against Farmers & Merchants State Bank and Elo Fehrenkamp, personally and as trustee, praying for an injunction restraining defendants from selling real estate described in the petition, and to recover $18,604 in the hands of the defendant Bank. The temporary injunction was issued.

The case came on for trial, and plaintiffs' demurrers and exceptions were overruled by the court. The controversy was submitted to the court upon an agreed statement of facts, resulting in a judgment for defendants, denying plaintiffs any recovery except of certain property tendered by defendants, and decreeing recovery against appellant Green, individually and as independent executor, for $7,099.56, with interest and costs, and for a foreclosure of a deed of trust lien on said real estate, and vesting title in defendant bank to said fund of $18,604.

The plaintiffs alleged the death of William Green, and the appointment and qualification of Wm. D. Green as independent executor of the estate; that the estate owned 170 shares in the defunct bank.

When the defunct bank closed its doors on October 2, 1931, its real and personal property was placed in the hands of the State Bank Examiner, and later, on November 9, 1931, Buescher, for himself and as trustee, and Wm. D. Green, as independent executor, parties of the first part, entered into a contract with Farmers & Merchants State Bank of Moulton, Tex., party of the second part, under the terms of which the Farmers & Merchants State Bank, hereinafter referred to as F. & M. Bank, acquired the real and personal property of the defunct bank. It appears that this deal was made with the approval of the State Banking Commissioner. The said contract, omitting the formal parts and such stipulations as have no bearing upon the issues presented here, is as follows:

"Whereas, First State Bank of Moulton, Texas, a banking corporation under the laws of Texas, was on October 2, 1931, by its Board of Directors closed and placed in the hands of the Banking Commissioner of Texas, for liquidation, and thereafter said Banking Commissioner levied against the stock holders of said bank corporation an assessment of one hundred per cent of the par value of all of said stock; and thereafter said Banking Commissioner and Farmers & Merchants State Bank, of Moulton, Texas, agreed upon the sale of all assets of said First State Bank, of Moulton, Texas, of every kind, including the liability for and upon said assessment of the said stockholders of said First State Bank, of Moulton, Texas, by said Banking Commissioner to said Farmers & Merchants State Bank, of Moulton, Texas, in consideration of which assets and property said Farmers & Merchants State Bank, of Moulton, Texas, has agreed to assume all of the liabilities of every kind, known and unknown, of said First State Bank, of Moulton, Texas, except its liability to its stockholders as such;

"And whereas, the terms of said sale and purchase have been duly submitted to the District Judge of Lavaca County, Texas, by application for authority to make such sale, duly made by said Banking Commissioner, and by order duly made by said Judge on the 9th day of November, A. D. 1931, and after due notice and hearing, the said Banking Commissioner was duly authorized and directed to make such sale, and said Banking Commissioner has so sold, conveyed, transferred and assigned all of said real and personal property and stockholders' assessments unto said Farmers & Merchants State Bank, of Moulton,

Texas, which corporation so purchased the same and bound itself to assume, pay off and discharge all of the debts and liabilities (except liability to stockholders as such) of said First State Bank, of Moulton, Texas; and at the time of consummating said transaction said purchasing Bank receives the securities herein mentioned, and executes this agreement;

"Now, therefore, in consummation of prior negotiations to the end above stated, we, O. Buescher, of Bastrop County, Texas, for himself and as agent for the other stockholders of said First State Bank of Moulton (other than William D. Green), who have contributed or may contribute cash to the guaranty fund herein described, and William D. Green, of Lavaca County, Texas, as Independent Executor of the estate of William Green, deceased, parties of the first part, and said Farmers & Merchants State Bank, of Moulton, Texas, herein acting by Ed. Boehm, its Vice President, under its corporate seal, by due authority of a resolution of its Board of Directors, party of the second part, hereby agree and contract as follows:

"1. A guaranty fund of $25,000.00 is hereby provided to and for said Farmers & Merchants State Bank. Of said sum $18,604.00 in cash is now here paid over to Farmers & Merchants State Bank, to be held by it and kept in a separate account, in accordance with this contract, the same being paid and provided by the said O. Buescher, for himself, and as agent for the other stockholders (other than said William D. Green), who have contributed cash to said Buescher as a part of said guaranty fund. To secure the difference between the cash just mentioned and $25,000.00, said difference being the amount necessary with said cash to make said fund amount to $25,000.00, said William D. Green, as Independent Executor aforesaid, and personally, has this day executed and delivered to Elo Fehrenkamp, trustee, his deed of trust conveying six tracts of land in Lavaca and DeWitt Counties, Texas, as security aforesaid, with power of sale in the usual form.

"It is now finally and conclusively agreed that said F. & M. State Bank takes the banking house and lot in Moulton, Texas, where said First State Bank engaged in business, at the book value thereof, to-wit, $7,768.63, and the furniture and fixtures of said former bank in said building at the book value thereof, $6501.18. These values of these properties shall remain fixed in regard to this guaranty, and these properties shall not be subject to any 'write-down' or lowering from these values in determining the loss, if any, hereinafter referred to.

"4. If on December 31, A. D. 1932, said Farmers & Merchants State Bank, of Moulton, Texas, has realized out of the assets purchased by it as aforesaid, being all of the assets and property, real and personal, of First State Bank, of Moulton, Texas, a sum in cash which with the said banking house, furniture and fixtures at the fixed price mentioned in paragraph No. '2' above, aggregates the sum of $172,266.34, not including interest, rent, dividends or other earnings or revenue for the use of said property, then this obligation and guaranty shall be satisfied, and all of said assets and property so sold and conveyed to it by the Banking Commissioner, then remaining out of the former assets of First State Bank, of Moulton, Texas, shall be wholly the property of said Farmers & Merchants State Bank free from any accountability of any sort to the parties of the first part and free from any right, title, claim or interest in law or equity by the parties of the first part and their heirs, executors or administrators; and in such case the said cash paid into said guaranty fund shall be by Farmers & Merchants State Bank, of Moulton, Texas, paid over to said O. Buescher, as agent and trustee, and said deed of trust executed by said William D. Green, personally, and as Independent Executor of the Estate of William Green, deceased, shall be fully and finally released.

"5. The said sum of $172,266.34 shall include the banking house and lot, and furniture and fixtures at the fixed price set forth in paragraph '2' hereof, and the remainder of said sum shall be out of the principal of notes collected, bonds or other securities, and sale price of other assets, other than said banking house and lot, furniture and fixtures. Any interest collected on the principal of the notes and bonds and other securities included in said $172,266.34, by said F. & M. State Bank up to and prior to December 31, 1932, shall not be included or reckoned in as a part of said $172,266.34; nor shall any rent, dividends, income or profits be reckoned or included as a part of said sum to be realized and collected by said F. & M. State Bank prior to December 31, 1932 under this agreement. Likewise the collections, receipts, sale price and sums realized out of

said purchased assets by F. & M. State Bank up to December 31, 1932, shall not be diminished or have charged against it any sums which may be paid out by said F. & M. State Bank during said time, nor any sum assumed by it, for taxes upon the property of said First State Bank for the year 1931, or subsequent thereto, nor for interest owing on any time deposit in said First State Bank of Moulton, nor for repairs or expenses incurred or accruing, nor for any debt or liability whatsoever of First State Bank, of Moulton, Texas.

"6. However, should Farmers & Merchants State Bank, of Moulton, Texas, collect and receive less than said sum of $172,266.34 (which shall include the banking house and lot, furniture and fixtures mentioned in paragraph 2 hereof, at the fixed value placed on same in said paragraph 2) out of the principal of all the notes and assets of First State Bank, of Moulton, Texas, by December 31, 1932, then and in that event and on December 31, 1932, and not before, said Farmers & Merchants State Bank, of Moulton, Texas, shall have the right to resort to said guaranty fund of $25,000.00, mentioned in paragraph 1 hereof, to make up the difference, or sum by which said total receipts and collections up to December 31, 1932, shall be less than $172,266.34 and take from said fund such amount or difference, as its property. Said Bank is not to allow or pay any interest on said guaranty fund. Any of said guaranty fund, money or Deed of Trust security, not so required to make up such difference, shall be returned to the parties of the first part.

"7. Said guaranty fund mentioned above, being $25,000.00 in cash and Deed of Trust security, is now delivered to said F. & M. State Bank, for its protection and indemnity against loss in taking over the assets of First State Bank, of Moulton, Texas, to the extent of and not exceeding $25,000.00. It is specially contracted and agreed that making said guaranty fund now immediately available, and assured, is hereby accepted in total satisfaction of said stockholders' assessments, and every one of the same are hereby totally released, cancelled and discharged, in any and every event, and notwithstanding that the said guaranty fund of cash and security, or a part of it, may eventually be returned to the parties of the first part under the terms of this contract.

"8. In the event that on December 31, 1932 said F. & M. State Bank shall have received and collected out of said purchased assets a less sum than $172,266.34 (including as a part of the receipts and collections the banking house and lot, furniture and fixtures, at the fixed price as provided in paragraph 2 hereof), and said Bank resorts to said guaranty fund of $25,000.00 as provided in paragraph 6 hereof, then and in that event on December. 31, 1932, said bank shall indorse without recourse and shall assign, convey, transfer and deliver to the parties of the first 'part out of said purchased assets, notes and real property except said bank building and lot and furniture and fixtures, of the present book value thereof as shown by the books of First State Bank of Moulton, Texas, amounting to $68,411.85, plus property and assets (not including said bank building and lot and furniture and fixtures) of the present book value thereof equivalent to the amount taken out of said guaranty fund by said F. & M. State Bank, plus any interest collected on any of such notes so returned; notes and assets returned to be selected by F. & M. State Bank, but said Bank shall not be liable or responsible for the proper distribution of same.

." * * * all parties believe that in all likelihood that said assets of First State Bank of Moulton will probably produce sufficient to pay all of its debts and liabilities, except the stockholders interests as such, for which reasons Farmers & Merchants State Bank, of Moulton, Texas, has so purchased said assets and property and assumed the liabilities of First State Bank of Moulton (except the liability or interest of the stockholders as such), and while the assessment upon the stockholders of First State Bank of Moulton has been made and assigned to Farmers & Merchants State Bank, as above stated, the payment thereof at this time is not fully available or collectable; and making said sum of $25,000.00 secure now, as set forth in this instrument, is the consideration moving Farmers & Merchants State Bank, of Moulton, Texas, to this release, and cancellation of said stockholders' assessments."

The following stipulations material to the issues to be considered are taken from the agreed statement of facts:

"4. All of said stockholders in said closed Bank were liable for an assessment of one hundred per cent. (100%), upon the

par value of the said stock, and same was levied by the Banking Commissioner before the confirmation of the sale to the defendant Bank;

"5. That said William Green died on May 10, A. D. 1927, and his Will was duly probated and by the terms of which and the order of Probate Court, plaintiff William D. Green was appointed as the Independent Executor and he qualified as such prior to the closing of said The First State Bank, and is now such Independent Executor, and said estate is and was, at the time of the execution of the contract hereinafter referred to, in process of administration by him.

"7. Prior to the execution of said agreement the Banking Commissioner duly applied to the District Court of Lavaca County, Texas, and obtained the necessary authority and order, and thereupon duly sold, conveyed, transferred and delivered all of the assets of said The First State Bank of Moulton to defendant, Farmers' & Merchants' State Bank of Moulton, in consideration of the latter assuming all of the liabilities of said defunct Bank except said stockholders' liabilities as such, and said Farmers' & Merchants' State Bank took possession of all said assets and has all of same or the proceeds thereof. ·

"8. At the time of the execution of said contract, the plaintiff, O. Buescher for himself and other stockholders for whom he is trustee, deposited or placed in the hands of said Farmers' & Merchants' State Bank, the sum of Eighteen Thousand Six Hundred and Four Dollars ($18,604.00), as part of the guaranty fund as mentioned in the contract, which sum said Bank now has.

"12. On or about December 31st, A. D. 1932, it was mutually agreed by all parties that the time specified in said written contract as terminating on December 31st, A. D. 1932, should be extended to December 31st, A. D. 1933."

Paragraph 13 sets out the assets of the defunct bank as listed by the agents and examiners of the Banking Commissioner, the total value of which is $315,900.74. The guaranty fund then deposited in the F. & M. Bank does not appear in said list.

"15. Up to and including December 31st, A. D. 1933, defendant, Farmers & Merchants State Bank had collected out of the assets of The First State Bank the following:

| | |
|---|---|
| Principal of notes collected | $94,135.84 |
| Commercial paper | 13,000.00 |
| Bonds | 4,000.00 |
| Warrants | 175.00 |
| Acceptance | 33.33 |
| Real estate sold | 1,671.32 |
| Collected out of charged-off items | 401.84 |
| Total | $113,417.33 |

"16. * * * There was in the First State Bank of Moulton when its assets were transferred to defendant Bank, cash and cash items amounting to $6,195.00, which defendant Bank received at time of said transfer as shown in paragraph 13 hereof.

"17. The contract in question and hereinabove set out, was wholly written and prepared by attorney for plaintiffs and submitted to attorney for defendant for approval and attorney for defendant suggested several minor changes.

"18. Defendant Bank furnished to plaintiff Buescher for himself and as Agent and Trustee for other stockholders (other than Wm. D. Green), sometime during January, 1934, statement containing list of notes and other assets to be returned to plaintiffs and then and there notified plaintiff Buescher that it intended to appropriate entire guaranty fund. Plaintiff Buescher for himself and other stockholders (other than Wm. D. Green) orally stated to defendant that said defendant was entitled to entire guaranty fund, and that the sum of Eighteen Thousand Six Hundred and Four Dollars ($18,604.00) paid in cash by Buescher for himself and as trustee of other stockholders was to be given to defendant Bank as soon as said Bank reached an agreement with plaintiff Green.

"19. After demand by Farmers' & Merchants' State Bank upon plaintiff, William D. Green, for the payment of Six Thousand Three Hundred Ninety-six Dollars ($6,396.00), the portion of the guaranty fund due by him, and refusal of payment of same, said defendant Bank requested the trustee named in said Deed of Trust to advertise the land covered by it for sale by said trustee on September 4th, A. D. 1934, and said advertisements were duly posted by said trustee for sale of said land on said day;

"20. On September 1st, A. D. 1934, plaintiffs filed their Original Petition in this Cause and obtained a temporary injunction restraining said sale under said notices, which had been duly issued and served;

"21. Said Eighteen Thousand Six Hundred and Four Dollars ($18,604.00) mentioned in said contract as having been paid by plaintiff, O. Buescher for himself and trustee, is still in the hands of defendant Bank under the terms of said contract.

"23. Defendant Bank has paid all the liabilities of The First State Bank in accordance with the terms of contract hereinabove set out, and has tendered into Court in compliance with the terms of said contract to plaintiffs, promissory notes and real estate as described in the judgment herein, of the book value on November 9, 1931 of Ninety-three Thousand Four Hundred and Eleven and 85/100 Dollars ($93,411.85), and interest collected on said Notes so tendered bank, which is in compliance with the terms of the contract hereinabove set out."

We find no allegation of fraud, accident, or mistake in the pleadings of the parties; neither is there any allegation that the contract is ambiguous and does not reflect the intention of the parties to it. As we understand the contract, construed in the light of the agreed statement of facts, there is nothing ambiguous in it, and no conflicting provisions. We think the court erred in its construction.

The main issue in the case is the right of the parties to what is designated as the "$25,000.00 guaranty fund." In the preamble it is said that the parties have agreed to the sale of all assets of the defunct bank of every kind, including the liability for and upon said assessment of said stockholders of said First State Bank of Moulton by said Banking Commissioner.

■ The assets of a bank which becomes insolvent do not include the double liability of stockholders. 7 C.J. 742, § 519; Conway v. Owensboro Savings Bank, etc., Co. (C.C.) 165 F. 822.

At the time the contract was executed, the Banking Commissioner had already levied an assessment of 100 per cent. against each stockholder, and by the terms of the contract the defendant bank "acquired all assets of said First State Bank of every kind, including the liability for and upon said assessment of said stockholders of said First State Bank of Moulton, Texas, by said Banking Commissioner."

It is further recited in the first paragraph of the written contract that in consideration of which "assets and property" the defendant bank "has agreed to assume all of the liabilities of every kind known or unknown" of said defunct bank, "except its liability to its stockholders as such."

■ Our interpretation of the contract is that the $25,000 guaranty fund was to be collected and deposited in the defendant bank to protect it from any known or unknown liability in the event the defendant bank failed to realize from the property of the defunct bank the sum of $172,266.34. Without the provision with reference to the stockholders' assessments, the defendant bank would have had no right to the funds to be collected under such assessment, which accounts for that item being inserted in the contract as a part of the property and assets of the defunct bank which defendant bank had acquired.

Following the above references to the guaranty fund of $25,000, it is recited that Buescher for himself, and as agent for the other stockholders of the defunct bank (except Green) who have contributed or may contribute cash to the guaranty fund, have executed the contract for the purpose of consummating the prior negotiations between the parties to the ends above stated.

Paragraph 1 of the contract expressly provides that a guaranty fund of $25,000 is provided for the defendant bank; that of said fund $18,604 is then paid over to the defendant bank to be by it held and kept in a separate account in accordance with the contract; that said sum has been contributed by the stockholders (other than Green); that Green, as independent executor, and personally, has executed and delivered to Fehrenkamp, as trustee, his deed of trust conveying six tracts of land to secure his note, which represents the difference between the $18,604 guaranty fund actually deposited and the $25,000 which constituted the full sum of the guaranty.

Paragraph 4 provides that if, on December 31, 1932, the defendant bank has realized out of the assets purchased by it, being all of the assets and property, real and personal, of the defunct bank, a sum in cash which, with the banking house, furniture, and fixtures, at the agreed price therefor, the sum of $172,266.34 (not including interest, rent, dividends, or other earnings or revenue for the use of said property), then the obligation and guaranty shall be satisfied and all of said assets and property so sold and conveyed to it then remaining out of the former assets of the defunct bank shall be wholly the property of said F. &

M. Bank, free from any accountability of any sort to the parties of the first part, and it further provides in such case the cash paid into the guaranty fund shall by the defendant bank be paid over to said Buescher as agent and trustee, and that the Green deed of trust shall be fully and finally released.

There could be no clearer ·statement of the purpose of the parties in establishing the guaranty fund, and of the disposition to be made thereof when the defendant bank had realized $172,266.34.

The word "realize" as used in this contract means when all of the assets purchased and delivered to the defendant bank have been reduced to actual cash, and have come into the possession and ownership of the defendant bank. 52 C.J. 1180.

It appears that at the time the Banking Commissioner took over the property, the defunct bank had on deposit in other banks the sum of $45,413.70. This property certainly constituted a part of the assets of the defunct bank at that time. So far as the record shows, said bank or the Banking Commissioner had the right to reduce these deposits in other banks into possession, and we have no doubt that said amount was intended by the parties to be reckoned as a part of "all the assets, real and personal," of the defunct bank.

The cardinal rule for the construction of contracts is to ascertain and give effect to the intention of the parties as expressed in the language which they have used, provided, of course, such intention is not in conflict with rules of law. San Jacinto Oil Co. v. Fort Worth Power & Light Co., 41 Tex.Civ.App. 293, 93 S.W. 173.

The appellee insists that the court's judgment is correct, and bases the contention upon the first sentence of paragraph 5, which is: "The said sum of $172,266.34, which includes the banking house and lot and furniture and fixtures at the fixed price set forth in, paragraph 2 hereof, and the remainder of said sum shall be out of the principal of notes collected, bonds or other securities, and the sale price of other assets other than said banking house and lot, furniture and fixtures."

Another rule of equal importance in the interpretation of contracts is that it is not proper to consider a single paragraph or clause by itself in order to ascertain its meaning. Each clause or paragraph must be construed with reference to every other paragraph, and the effect of other paragraphs upon the other determined.

The contention is made that because the guaranty fund of $25,000 and the sums in other banks is not mentioned specifically, they are not to be taken into consideration in estimating the total sum to be realized by the appellee. We think those items are included in the term "other securities and sale price of other assets," and that not only cash, but these items should be reckoned as a part of said sum. Cash items, in banking phraseology, mean notes, checks, or memoranda in the paying teller's possession at the close of a day's work which he, for the time being, treats as cash in order to make his books balance. La Monte v. Mott, 93 N.J.Eq. 255, 116 A. 269, affirming 93 N.J.Eq. 229, 107 A. 462.

Paragraph 6 provides that should the defendant bank collect and receive less than said sum of $172,266.34 (including the banking house, furniture, fixtures, etc.), out of the principal of all the notes and assets of the defunct bank by December 31, 1932, then and in that event, on December 31, 1932, and not before, said defendant bank had the right to resort to the guaranty fund of $25,000 to make up the difference between the total receipts and collections up to December 31, 1932, and $172,266.34, and to take from said (guaranty) fund such amount of difference as its property. This paragraph clearly denies the right of the defendant bank to any part of the $25,000 if the full sum has been previously realized within the time stated.

By subsequent agreement, the time for the performance of the contract was extended one year, and the statement of facts shows that on December 31, 1933, defendant bank had collected the total sum of $113,417.33 from the principal of notes, commercial paper, bonds, warrants, acceptances, real estate sold, and charged-off items. Adding to that sum the fixed value of the banking house, furniture, and fixtures which was taken at its book value, $14,269.81, there was an aggregate of $127,687.14 realized by the defendant bank within the time limited in the contract and extended by the mutual agreement. In addition to these collections and items just enumerated, there was also delivered to the defendant bank cash and cash items of the defunct bank amounting to $61,095.71, and the defendant bank collected the deposits of the defunct bank in other banks

at the time of the sale and transfer aggregating $39,217.71, and the total amount of the cash, cash items, and deposits in other banking houses being $45,413.70, which was also received by the defendant bank prior to December 31, 1933, make the aggregate receipts and collections realized from the assets of the defunct bank prior to December 1, 1933, $172,100.84, not including accounting, interest, rent, dividends, or other earnings or revenue from the use of the property.

Further discussion would seem to be unnecessary to demonstrate that the defendant bank was not entitled to any part of the $25,000, nor to foreclosure of its lien on Green's land. Said bank would not be entitled to any part of the guaranty fund unless it had realized less than $172,266.34 prior to December 31, 1932. The contract makes this statement true beyond any doubt. It appears that Fehrenkamp, when the time for settlement with the defendant bank arrived, and while he was cashier of said bank and trustee named in the Green deed of trust, informed Buescher that under the written agreement and the facts and figures, his bank was entitled to have the guaranty fund in addition to what it had already realized, and it appears from the statement of facts that Buescher assented to Fehrenkamp's statement and said that the bank should have the cash in the fund as soon as the bank reached an agreement with Mr. Green.

The right to the fund in no degree depended upon the agreement of Fehrenkamp and Buescher. That right must be determined from the language of the contract, and the statements made by Fehrenkamp and Buescher are nothing more than the expression of their legal opinions as to the rights of the parties under the contract. We are not informed by the statement of facts to what extent Buescher was a "trustee and agent" further than that he represented the other stockholders in collecting and depositing the $25,000 guaranty fund. Under the record he was simply an agent, without any further power than to collect and deposit the fund, and he had no authority to enter into any agreement with Fehrenkamp, either verbally or in writing, with reference to the final disposition of the $25,000 guaranty fund, contrary to the provisions of the contract.

We are further sustained in our position by other recitations in the contract. Para-graph 7 provides that the guaranty fund, being $25,000 in cash and a deed of trust (signed by Green), "is now delivered to said Farmers & Merchants State Bank for its protection and indemnity against loss in taking over the assets of the First State Bank to the extent of and not exceeding $25,000.00." The further purpose of raising the $25,000 guaranty fund is expressed in paragraph 7 as follows: "It is specially contracted and agreed that making said guaranty fund now immediately available and assured is hereby accepted in total satisfaction of said stockholders' assessments, and every one of the same are hereby totally released, cancelled and discharged in any and every event, and notwithstanding that the said guaranty fund of cash and securities, or part of it, may eventually be returned to the parties of the first part under the terms of this contract."

One purpose of depositing the $25,000 was to relieve the stockholders of liability on their assessments, and according to the terms of the paragraph, they were released and discharged upon the deposit of the guaranty fund, and clearly recognizes the possibility that the guaranty fund and the secured note may eventually be returned to the stockholders.

Paragraph 8 makes our interpretation of the contract even more certain, in that it provides that on December 31, 1932 (1933), if the defendant bank should have received and collected out of said purchased assets, less than $172,266.34 (including the price of the banking house, furniture, and fixtures), and in the further event the bank resorts to the guaranty fund as provided in paragraph 6, then and in that event, on December 31, 1932 (1933), said bank shall indorse, without recourse, and shall assign, convey, transfer and deliver to the parties of the first part out of said purchased assets, notes, and real property, excluding the banking building, amounting to $68,411.85, plus property and assets not included in the building, etc., of the present book value thereof, equivalent to the amount taken out of said guaranty fund by said defendant bank, plus any interest collected on any of such notes so returned, notes and assets to be returned to be selected by the defendant bank. Clearly this paragraph guarantees the return of all of the guaranty fund, with interest on it, which the defendant bank may have appropriated to its own use pending a final settlement.

It is recited in paragraph 10: "All parties believe that in all likelihood said assets of First State Bank will probably produce sufficient to pay all of its debts and liabilities, except the stockholders' interests as such, for which reasons Farmers & Merchants State Bank has so purchased said assets and property and assumed the liabilities of the First State Bank (except the liability and interest of stockholders), and while the assessment upon the stockholders of First State Bank has been made, and assigned to Farmers & Merchants State Bank as above stated, the payment thereof at this time is not fully available or collectable, and making said sum of $25,000.00 secure now, as set forth in this instrument, is the consideration moving Farmers & Merchants State Bank to this release and cancellation of said stockholders' assessments."

The judgment is reversed and the cause remanded.