## HUMPHREY v. SOUTHPORT PETRO-LEUM CO.

### No. 5380.

Court of Civil Appeals of Texas. Texarkana.

July 27, 1939.

Mayfield, Grisham & Grisham and J. A. Lantz, all of Tyler, for appellant.

Harrington & Harrington, of Longview, for appellee.

HALL, Justice.

Southport Petroleum Company, in possession of and claiming to be the owner of two 500-barrel oil tanks by purchase from one David T. Nowlin, sued appellant, Fred Humphrey, for title and possession, and also sought injunctive relief to restrain Humphrey from interfering with appellee's use and enjoyment of the tanks.

Appellant in his answer and by his evidence contended that he owned the tanks in controversy; that they were purchased by him from one Tolbert; that though he took title to the tanks in the name of Nowlin, the latter transferred on May 22, 1936, full title to him, which was several months prior to the alleged sale by Nowlin to appellee; that if and when Nowlin sold to appellee it was done without his knowledge or consent.

By supplemental petition appellee pleaded that Nowlin was a partner of appellant in the reclamation plant, of which the two tanks were a part; also pleaded an estoppel and a ratification. These appellant denied.

Trial was to the court without a jury and resulted in judgment for appellee for title and possession of the two oil tanks, and perpetuating a temporary injunction. The record discloses that no findings of fact or conclusions of law were filed by the trial court and none were requested, so the judgment of the trial court must be affirmed if the evidence as disclosed by the record supports it on any theory of the case. Adcock v. Shell, Tex. Civ.App., 273 S.W. 900, writ refused; Fred Bolyard v. Toronto Pipe Line Co., Tex.Civ.App., 120 S.W.2d 960, writ denied; and cases cited.

In the disposition of this appeal only the issue of ratification will be noticed. Appellant testified when he purchased the reclamation plant which included the two tanks he had the title placed in the name of Nowlin, his brother-in-law. The reason therefor, as given by appellant, was that "at that time there was a confiscation suit on this plant, and some other litigation, and I did not want to be known as the

396

owner." Appellant made an effort in the name of Nowlin to remove the oil in the tanks, but was not successful in securing a tender from the Railroad Commission. Appellant also testified that although Nowlin and he executed certain joint notes in part payment of the purchase price of the plant, he had paid all of same, and Nowlin never had any interest in it, but was merely employed by him to look after the plant. No written transfers of title were ever filed for record. Appellee in no way had notice of same. Nowlin made the sale to appellee on September 17, 1936.

Appellee's evidence on the question of ratification was to the effect that Nowlin approached its superintendent of pipe lines and production, Mr. Flatt, and proposed the sale of the oil tanks in controversy, stating that they were owned by him and appellant, his partner. Flatt testified that he told Nowlin the price he would pay for the tanks, that Nowlin left him to call appellant on the telephone, and returned later and accepted the price offered and an additional sum of $50 as one year's ground rent for the lease on which the tanks were located. Flatt testified that appellee paid Nowlin the agreed price for the tanks and took a bill of sale from him therefor. Flatt also testified that sometime after the sale of the oil tanks by appellee to Nowlin appellant came to the lease where the tanks were located. Flatt testified further that appellee paid Nowlin the agreed price for the tanks and took a bill of sale from him therefor. Flatt also testified that sometime after the sale of the oil tanks by appellee to Nowlin appellant came to the lease where the tanks were located and the following conversation between Flatt and appellant ensued:

"A few days after the transaction, a man that works for me was up at the well, and a car drove up, out by these tanks. A gentleman got out, and asked Mr. Renrick, a fellow that was with me, if he knew Mr. Humphrey. He said he didn't. I said, 'There is a gentleman out there and he looks like he is looking around, I am going out to see if that is not him.' I went out, and I asked him if that was Mr. Humphrey, and he said it was. I told him my name. During that time we had cleaned up the trash around the tanks. He (appellant) said, 'I see you are doing a little work cleaning up.' I said, 'Yes, sir, you know we bought these tanks from Mr. Nowlin.' He

said, 'Mr. Nowlin is my brother-in-law and in charge, and everything he does is all right.' I asked him when he was going to get the rest of the oil out of that one tank, that had a little in it, and he told me as soon as he could make some room in some more tanks that sat off a little ways from these, he would get that out. That is about all that was said. That was the last I talked with Mr. Humphreys."

Another employee of appellee corroborated the witness Flatt in this respect. Appellant denied that any such statement was made, but testified that a short time after learning of the sale by Nowlin he went to the office of appellee and repudiated the sale and demanded possession of the two tanks. In this appellee is corroborated, except as to the time appellant called at the office. Flatt says that when appellant talked with him at the tanks Nowlin was available in the nearby town of Kilgore, but when appellant called at the office and repudiated Nowlin's sale at a later date Nowlin was gone. Appellant at that time did not know of his whereabouts.

From a careful consideration of the facts and circumstances in this record we conclude that there is sufficient evidence to sustain the judgment of the court below on the theory that appellant with full knowledge of the facts and circumstances subsequently ratified the action of Nowlin in this sale. These disputed issues of fact were before the trial court for determination as was also the credibility of the witnesses and the weight to be given their testimony, and we see no good reason for disturbing his judgment in this respect. Ratification "is variously defined as the act of giving sanction and validity to something done by another; the adoption by a person as binding upon himself of an act done in such relation that he may claim it as done for his benefit, although done under such circumstances as would not bind him but for his subsequent assent; the confirmation of a previous act done either by the party himself or by another; the confirmation of a voidable act." 52 C.J. p. 1144, Sec. 1; Texas & Pacific Coal & Oil Co. v. Kirtley, Tex.Civ.App., 288 S.W. 619, writ refused; Broom v. Pearson, Tex.Civ. App., 180 S.W. 895.

If the facts and circumstances in this record, aside from the declarations of Nowlin, be sufficient to constitute appellant and Nowlin partners in the ownership and

operation of the reclamation plant, which we are inclined to believe, still the rule of law set out above would control. 47 C.J. p. 893, Sec. 376.

The judgment is affirmed.