**A. R. VALDES et al., Appellants,**

**v.**

**Richard MOORE et al., Appellees.**

**No. 569.**

Court of Civil Appeals of Texas, Houston (14th Dist.).

Feb. 9, 1972.

Rehearing Denied March 1, 1972.

Harold Lloyd, Robert N. Hinton, Jr., Houston, for appellants.

A. F. Curry, William H. Young, Robert L. Blevins, Jr., Fulbright, Crooker & Jawor-

ski, J. P. Markham, Jr., Houston, for appellees.

TUNKS, Chief Justice.

In 1953 the then owners of an approximately 50 acre tract of land in the Memorial Drive area of Harris County subdivided that land into 46 lots. An instrument imposing restrictions upon the use of the lots was filed for record in the Deed Records of Harris County. That instrument restricted the lots to use basically, for residential purposes. The instrument contained the following provision:

"All restrictions and covenants herein set forth shall continue for a period of twenty-five years from date hereof and shall automatically be extended thereafter for successive periods of ten (10) years; provided, however, that the owners of the majority of these sites may change, modify or omit such restrictions, or any of them, by executing and acknowledging an appropriate instrument in writing, filed with the Office of the County Clerk of Harris County, Texas."

Thereafter all of the lots within the subdivision were sold by the subdividers. The instruments of conveyance by which such lots were sold made reference to the recorded restrictions.

In 1966 a number of people who then owned lots within the subdivision executed and recorded an instrument purporting to amend the 1953 restrictions. That instrument retained the restrictions on the property by which it was restricted to use for residential purposes, but changed the provision as to the duration of the restrictions so that it read as follows:

"Now, therefore, we, the undersigned, being the owners of at least a majority of the said lots and tracts above-described, do hereby approve, agree to, ratify and adopt the following covenants, conditions, and restrictions which shall be binding on the undersigned and on all parties and persons claiming title, owner-

ship and possession to any and all tracts located therein until January 1, 1983, at which time such covenants, conditions and restrictions shall be automatically extended for successive periods of ten (10) years unless at that time in a duly recorded instrument signed by a majority of record owners of the tracts (as herein defined) in the above-described addition, it is agreed to change, alter, revise, amend or omit such covenants, conditions and restrictions, in whole or in part, and such restrictions and covenants shall thereafter be automatically extended at the expiration of each period of ten (10) years unless changed in the manner aforesaid."

In 1970 other people who then owned lots within the subdivision executed and recorded another instrument again purporting to amend the 1953 restrictions. This instrument substantially changed the use to which the property could be put. Such instrument permitted the use for commercial purposes that portion of the property fronting on Memorial Drive and having a depth of 216.7 feet on the east boundary line and 179.5 feet on the west. It also permitted the use of the rest of the lots in the subdivision for multiple family residences. As to the provision relating to the duration of such amended restrictions the following language was used:

"12. All restrictions and covenants herein set forth shall continue for the period commencing with the date of this instrument, and ending upon the 4th day of May, 1978, and shall automatically be extended thereafter for successive period of ten (10) years provided, however, that the owners of the majority of these sites, lands and tracts of land may change, modify or omit such restrictions, or any one of them, by executing and acknowledging an appropriate instrument in writing, filed with the office of the County Clerk of Harris County, Texas."

The contents of the instruments above described will sometimes be referred to as

the original restrictions, the 1966 amendments and the 1970 amendments.

After the 1970 amendments were filed some of the signers of the 1966 amendments filed suit against the signers of the 1970 amendments which suit resulted in the judgment from which this appeal is maintained. In their petition those plaintiffs made alternative allegations. First, they alleged that the 1966 amendments were valid and that, because the duration provision therein contained irrevocably extended their effect until 1983, the 1970 amendments were void and of no effect. Second, and in the alternative, they alleged that under the language of the duration provision of the original restrictions no amendment of them could be made until 1978. In their prayer the plaintiffs sought a declaratory judgment that the 1966 amendments were valid and binding and that the 1970 amendments were invalid and of no effect. Alternatively they prayed that the 1953 amendments be adjudged valid and binding until 1978.

Some of the defendants in the above mentioned suit, being signers of the 1970 amendments, filed a pleading called "Counterclaim, Crossclaim and Third Party Action." Their counterclaim was directed against those named as plaintiffs in the lawsuit. Their crossclaim was directed against those who were named defendants in the lawsuit, but who had not joined in the counterclaim. The third party action was directed against parties owning lots in the subdivision, but who had not theretofore been named as parties (either plaintiff or defendant) to the lawsuit. The parties so named in those pleadings constituted the owners of all of the lots in the subdivision. The parties filing such pleadings, who will be sometimes referred to herein as counter plaintiffs, alleged that the 1966 amendments were not valid because they were not signed by the owners of a majority of the lots in the subdivision, and the 1970 amendments were, in accordance with the provisions of the original restrictions, signed by the owners of a majority of the lots and were

valid and binding. They prayed for an adjudication of the validity of the 1970 amendments and the invalidity of the 1966 amendments.

After the issues were joined by the pleadings described above both the counter plaintiffs and the plaintiffs filed motions for summary judgment. The counter plaintiffs' motion recited that the 1966 amendments were invalid because they were not signed by the owners of a majority of the lots in the subdivision and that the 1970 amendments were valid because they were signed by such a majority and complied with the amendment provision in the original restrictions. The counter plaintiffs prayed for summary judgment that the 1966 amendments were invalid and that the 1970 amendments were valid.

The recitations of the plaintiffs' motion for summary judgment are particularly significant. The essence of those recitations is reflected in the following excerpt from the language of that motion:

"Plaintiffs would show that the 1966 Restrictions and Covenants were signed by the owners of a majority of the sites as required by the original restrictions filed of record in 1953 and the said 1966 Restrictions and Covenants are therefore the valid and existing restrictions on the property in question."

The prayer asked an adjudication that the 1966 amendments were valid and that the 1970 amendments were invalid. There was neither any recitation that the language of the original restrictions precluded their amendment until 1978 nor any prayer that they, the original restrictions, be adjudged to be of continuing effect and validity. The above quoted language from their motion was positive and no alternative or contradictory recitation appears in such motion. The recitations in the motion were verified by the affidavit of plaintiffs' attorney.

After a hearing the trial court granted the counter plaintiffs' motion for summary

judgment and overruled that of the plaintiffs. The summary judgment evidence consisted of certified copies of instruments filed in the county clerk's office, including copies of the original restrictions and the two purported amendments thereof and also including instruments showing derivation of title of the lots within the subdivision from the subdividers to the current owners. There were also affidavits concerning the status of the record titles as shown by the records in the county clerk's office. Those records show conclusively that the signers of the 1966 amendments did not own a majority of the lots within the subdivision and the signers of the 1970 amendments did so own a majority of such lots.

Certain of the parties named as cross defendants and third party defendants in the pleading above described as filed by the proponents of 1970 amendments filed pleadings by which they adopted the position of such proponents and adopted their pleadings. Others did not answer and default judgment was rendered as to them. One third party defendant answered by general denial. The trial court's judgment recited that that party appeared by attorney at the hearing of the motions for summary judgment, made known that she had received proper notice and recited that she did not wish to be heard. She, too, was a party to the judgment. Neither she nor those against whom default judgment was rendered have appealed. Thus the only parties to this appeal are the appellants who in their motion for summary judgment made the unqualified representation that the 1966 amendments were valid and the appellees who made such a representation that the 1970 amendments were valid.

The appellants by their appeal do not contend that the 1966 amendments are valid. Their counsel conceded in oral argument before this Court that they were not signed by the owners of the majority of the lots in the subdivision. The basis upon which appellants seek a reversal of the trial court's judgment is that set forth in the alternative plea in their petition, namely, that the language of the original restrictions does not permit their amendment until 1978. The appellees, on the other hand, contend that the unqualified recitation in the motion for summary judgment to the effect that the 1966 amendments were valid necessarily includes a representation that the original restrictions were susceptible of amendment before 1978, constituted an abandonment of the alternative contention in their petition and was a judicial admission of the fact that the original restrictions were susceptible of amendment before 1978.

■ A reading of the above quoted duration provision from the original restrictions clearly presents a question of construction. The proviso therein does not specifically limit the time as to which the restrictions may be amended. The language does not specifically say that the restrictions may be amended by the majority within the first 25 years, nor does it say that they may not be amended within such period. A literal reading of the language used would indicate that the owners of a majority of the lots could amend the restrictions before the first 25 year period had ended. However, such a construction would render meaningless the provision that the restrictions should continue for 25 years and for such successive 10 year periods thereafter. A written instrument whose meaning is not clear will be read in its entirety and, if possible, so construed as to give all of its language some effective meaning. Woods v. Sims, 154 Tex. 59, 273 S.W.2d 617 (1954). In keeping with that rule the language of the 1953 restriction instrument cannot be construed, as a matter of law, as permitting amendment within the first 25 year period. A holding to the effect that the restrictions could be so amended would require a resolution of a question of fact in support of such a holding. The existence of such a question of fact would preclude a summary judgment, as here rendered, that depended upon such a construction. Thus, if the trial court's

summary judgment is affirmed it must be because the appellants have judicially admitted that the restrictions could be amended within the first 25 year period.

A judicial admission is not merely evidence of the existence of an element of a cause of action, it is a judicial declaration that eliminates the adversary's necessity of proving such element upon which it relies. It establishes the admitted element as a matter of law in behalf of the adversary of the one making such admission. United States Fidelity & Guaranty Co. v. Carr, 242 S.W.2d 224 (Tex.Civ.App.—San Antonio 1951, writ ref'd); McCormick & Ray, Texas Law of Evidence, 2d Ed., Vol. II, sec. 1127, p. 25.

The Texas Supreme Court, in Griffin v. Superior Insurance Company, 161 Tex. 195, 338 S.W.2d 415 (1960) set out the rules to be applied in determining whether a declaration by a party to a law suit is a judicial admission. (See also the Carr case, cited supra.) The only one of those rules which might be read as creating a question as to whether the statement here made by these appellants was a judicial admission is the second wherein the Court said, at page 419, that for a statement to constitute a judicial admission it was necessary, "That the statement is contrary to an essential fact embraced in the theory of recovery or defense asserted by the person giving the testimony." That language, as demonstrated by the facts of that case, does not mean that the statement must be contrary to all of the alternative theories of recovery or defense of the declarant. That was a workman's compensation case wherein one element of the plaintiff's case, average weekly wage, permitted three alternative methods of proof. The plaintiff could have proved his average weekly wage by proving that he had worked at his job for the entire year before his injury; or by proving that he had not so worked for such entire year, but that another workman had; or that neither he nor any other workman had so worked for

such period. Tex.Rev.Civ.Stat.Ann. art. 8309, sec. 1. The statement made by plaintiff which was held to be a judicial admission was contrary to the facts required to be proved as the third of those alternatives, but was consistent with the facts of the second. In this case, the fact that the statement made by the appellants was consistent with their contention that the 1966 amendment was valid and that, for that reason, the 1970 amendment was invalid, does not prevent that statement's being construed as a judicial admission that precludes their denial of the validity of the 1970 amendment on the ground that the original restrictions could not be amended until 1978.

Our determination of the effect to be given appellants' representation that the original restrictions could be amended within the first 25 years is made with due consideration of the rule to the effect that allegations made in inconsistent, alternative pleadings do not constitute judicial admissions, nor, for that matter, even evidence of the matters so recited. Dallas Transit Company v. Young, 370 S.W.2d 6 (Tex. Civ.App.—Dallas 1963, writ ref'd n. r. e.); Flint v. Knox, 173 S.W.2d 214 (Tex.Civ. App.—Galveston 1943, writ ref'd w. o. m.); 45 Tex.Jur.2d, Pleading, sec. 84 (1963). The controlling admission here made by these appellants was not, however, an allegation in an alternative pleading. It was a positive representation made in a motion made as a basis for a judgment for which they prayed. If there were otherwise any doubt as to whether they, in making such admission, reserved their right to rely upon the contradictory allegations in their petition, that doubt was removed by their verification of their motion for summary judgment. It could hardly be said that a positive sworn statement is made with an intended reservation of the right to rely on a pleading that alleges a position contradictory to that sworn statement.

For the reasons stated we hold that the appellants are bound by a judicial admission that the original restrictions were sub-

ject to amendment, before 1978, by the owners of a majority of lots in the subdivision. Their points of error based upon a contrary construction are overruled.

Appellants' other points of error contend that the 1970 amendments are invalid because they depart from the plan, as reflected by the original amendments, to maintain the area in question as uniformly residential. Those points, too, are overruled. The appellants acquired their title to the property in the subdivision subject to the provision that the general plan of a residential subdivision might be altered by amendment of the original restrictions which established such plan. They may not successfully complain of its alteration in the manner so provided. Couch v. Southern Methodist University, 10 S.W.2d 973 (Tex.Com.App.1928, judgment adopted); Loving v. Clem, 30 S.W.2d 590 (Tex. Civ.App.—Dallas 1930, writ ref'd.).

The judgment of the trial court is affirmed.