H. Wayne **PIERSON** et al., Appellants,

v.

**PALESTINE CONTRACTORS, INC., Appellee.**

No. 1068.

Court of Civil Appeals of Texas, Tyler.

Dec. 15, 1977.

Rehearing Denied Jan. 5, 1978.

Charles H. Clark, Tyler, for appellants.

Terry M. Thorn, Paxton, Whitaker & Parsons, James R. Paxton, Palestine, for appellee.

DUNAGAN, Chief Justice.

This case involves a construction of a retirement trust established by appellee, Palestine Contractors, Inc., for the benefit of its employees. The appellants are three individuals who were employees of the appellee until they voluntarily terminated their employment in 1972 and 1973. It was stipulated by the parties that the appellants had a vested interest in the retirement trust at the time of their termination. Upon the termination of employment by appellants, the appellee caused to be issued three annuity policies which it had purchased from Crown Life Insurance Company. These policies do not contain any provisions of nontransferability.

The ownership of the policies was taken in the name of the Palestine Contractors Retirement Trust. Each appellant was named on the policies as the annuitant with their respective wives named as beneficiaries. These policies were then delivered to the appellants.

Appellants requested appellee to transfer ownership of the policies to the appellants. Appellee refused to do so, claiming that the trust instrument did not require such action.

Appellants brought this suit to construe the trust instrument, seeking a judgment of specific performance requiring appellee to transfer ownership of the annuity policies to the names of the appellants. Trial was without a jury and the trial court found for appellee.

We affirm.

All parties agree that the appellants have a vested interest in the benefits of the retirement trust. Vested interest is defined in the trust instrument as ". . . the minimum amount which a participant is entitled to receive under the applicable provisions of the plan . . .."

Neither side has any pleadings asserting that the trust instrument is ambiguous. The appellants go on to say in their brief that "[A]ppellants do not think there is any

ambiguity in this contract . . . ." The appellee agrees that the instrument is not ambiguous. Since this instrument is not ambiguous, we feel the applicable rules for construction of the instrument are set forth in *Brown v. Brown,* 245 S.W.2d 995 (Tex. Civ.App.—Amarillo 1954, writ ref'd) at page 997:

". . . In construing instruments our courts are governed by certain well established rules. A written instrument, not alleged to be ambiguous, must be construed so as to carry out the primary intent of the parties. It must be considered as a whole and given its reasonable, natural and probable meaning. It must be interpreted according to the obvious import of its language without resorting to a subtle or a forced construction. One clause cannot be considered by itself; every clause must be considered with reference to the whole instrument as well as with reference to every other clause. *Southern Travelers' Ass'n v. Wright,* Tex.Com.App., 34 S.W.2d 823; *Southwestern Life Ins. Co. v. Houston,* Tex.Civ.App., 121 S.W.2d 619, error refused; *Pagel v. Pumphrey,* Tex.Civ.App., 204 S.W.2d 58, writ refused; *Green v. Farmers & Merchants State Bank,* Tex. Civ.App., 100 S.W.2d 132, writ refused; *Guardian Trust Co. v. Bauereisen,* 132 Tex. 396, 121 S.W.2d 579."

■ It is apparent that our primary consideration in construing this instrument must be to determine the intention of the parties. We must gather the intention of the parties from a reading of the entire instrument and not from isolated parts thereof. *Wynnewood State Bank v. Embrey,* 451 S.W.2d 930, 932 (Tex.Civ.App.— Dallas 1970, writ ref'd n. r. e.); *Burrus Mills, Inc. v. Hein,* 378 S.W.2d 85, 88 (Tex. Civ.App.—Dallas 1964, writ dism'd); *Ervay, Inc. v. Wood,* 373 S.W.2d 380, 384 (Tex.Civ. App.—Dallas 1963, writ ref'd n. r. e.).

The following trust provisions are deemed to be relevant to the propriety of action taken by the appellee in this case:

"5–2 METHOD OF PAYMENT OF BENEFITS

(A) OTHER THAN LIFE INSURANCE DEATH BENEFITS—Any vested amount which a participant or his beneficiary may be entitled to receive by reason of the participant's retirement, death, disability or termination of employment will, in the sole discretion of the trustee, be distributed, in cash or in kind or in some combination thereof, as follows:

(1) . . .

(2) Any fully vested life insurance contracts on the life of and purchased for the sole benefit of said participant will either be:

(A) . . .

(B) Will be converted by the Trustee to a nontransferable annuity (as defined in sub-section 2–1(K) herein) for the benefit of the participant or his beneficiary and of the type set out in subparagraph 5–2(A)(3)(c) below, subject to the provisions and any applicable limitations of sections 5–4 and 8–3 thereof, and will then, following the completion of such conversion, be released to the participant or his beneficiary; or

. . . ."

Nontransferable annuity is defined in the trust instrument as:

"(K) Nontransferable annuity is an annuity type of contract wherein no portion of the interest of the owner, if said owner is other than the trust, can be transferred, sold, assigned, discounted or pledged as collateral for a loan or as security for the performance of an obligation or for any other purpose to any person or entity other than to the issuing life insurance company. However, it is specifically provided that such a contract may, at the sole discretion of the Trustee, contain provisions permitting said owner to:

(1) Surrender or pledge any portion of his interest therein to the issuing life insurance company;

(2) Designate the beneficiary to receive the proceeds thereof in the event of his death;

(3) Elect to receive a joint and survivor annuity; or

(4) Said contract may contain other provisions similar to those set out directly above or, in lieu thereof, may contain the provisions set out directly below.

"It is specifically provided that, at the sole option of the trustee, the nontransferable annuity contract may be a nonforfeitable type of contract whereby, in addition to the above restrictions, it is also provided that said owner cannot surrender or pledge any portion of his interest therein to the issuing life insurance company nor modify any of the provisions thereof, with the exception of changing his beneficiary designation, prior to the attainment of his normal retirement age (as defined in Sub-section 5–1(A) hereof) or prior to the attainment of an earlier date as may be selected by the Trustee pursuant to the provisions hereof."

The appellants contend in their brief that "Nowhere in the agreement is there any indication that when any employee terminates his employment he would receive anything other than present ownership of his vested interest . . . ." From our reading of it, the definition of a nontransferable annuity contained in the instrument clearly contemplates that the trust itself can be the owner of such annuities. The definition goes on to spell out the provisions that may be placed in an annuity "if said owner is other than the trust" (i. e. if the employees were named as owners).

The definition of a nontransferable annuity as contained in the instrument does not clearly define what a nontransferable annuity is if ownership is in the name of the trust itself. By construing the language "if said owner is other than the trust" one could reasonably infer that if the trust is the owner of the annuity there is no need to include the provisions contained in the definition in such annuity contract. This reasoning presupposes the idea that the trustee will act in a manner designed to carry out the trust purposes. Continuing this reasoning, any annuity purchased by the trust in its own name would for purposes of this definition be a nontransferable annuity

whether it contained these provisions or not.

On the other hand, this troublesome definition in the trust instrument could be construed in such a manner as to say it does not define any annuity owned by the trust itself, thus placing such an annuity completely outside the scope of the definition.

As we have previously noted, both parties assert this instrument is not ambiguous. This court is confronted by the duty to carry out the intentions of the parties as of the time they entered into such agreement, even though the meaning of such agreement may be in certain particulars unclear. *Sale v. Contran Corporation,* 486 S.W.2d 161, 165 (Tex.Civ.App.—Dallas 1972, writ ref'd n. r. e.); *Brewer v. Myers,* 545 S.W.2d 235, 237 (Tex.Civ.App.—Tyler 1976, no writ).

When viewed in the context of the entire trust instrument, we feel it is clear that the actions sought by the appellants in this case are not required by the trust instrument. The purpose of this retirement trust as set out in the introduction thereto is to provide for the employees some degree of financial security. The trust clearly provides that one of the methods of distribution available is the purchase of a nontransferable annuity for the "*benefit* of the participant." (Emphasis ours.) As we previously discussed, viewing solely the definition of a nontransferable annuity contained in the instrument, it is unclear whether an annuity owned by the trust falls within the definition. However, when viewed in light of the whole instrument it is clear that the parties intended for such an annuity to be included in the definition. In our view, the actions taken on behalf of the trust are a valid exercise of a method of distribution provided for by the trust instrument.

The judgment of the trial court is affirmed.