**FIRST NATIONAL BANK IN DALLAS, Independent Executor of the Estate of John Weldon Murchison, Deceased, Appellant,**

v.

**E. R. KINABREW, Appellee.**

**No. 1219.**

Court of Civil Appeals of Texas, Tyler.

Sept. 20, 1979.

Rehearing Denied Oct. 18, 1979.

140

Joe Gray, C. Taylor Ashworth, Jenkins & Gilchrist, Dallas, for appellant.

James W. Knowles, William C. Lowrey, Wilson, Miller, Spivey, Sheehy, Knowles & Hardy, Tyler, for appellee.

McKAY, Justice.

This is a declaratory judgment action brought by appellee seeking a determination of the rights of the parties under a purported assignment to appellee of an overriding royalty interest in seven mineral leases.

Appellee alleged that J. W. Murchison, acting by and through his agent and attorney-in-fact, R. L. Van Cleave, duly authorized by a power of attorney dated January 23, 1961, executed and delivered to appellee on May 5, 1961, an assignment of an overriding royalty, thereby assigning to appellee one-eighth of eight-eighths of all the oil, gas, and other minerals produced, saved, and marketed from a 120.3-acre tract of land comprising an oil unit identified as the Cely-Henderson Unit and now identified as being Tract No. 846 in the Fairway (James Lime) Unit (being the Field Wide Unit). Said assignment was allegedly made as compensation for services rendered to the community estate of John W. Murchison and wife, Gertrude B. Murchison. Appellee further alleged that an oil well was completed on said tract, that appellant had recovered the costs of drilling, and that after the recovery of such costs, appellee was entitled to receive his overriding royalty. Appellee prayed for an accounting, for a declaration that he was entitled to one-eighth of eight-eighths of the production of oil, gas, and other minerals from the land following appellant's recoupment of drilling costs, and for judgment against appellant for the value of one-eighth of eight-eighths of the production of oil, gas, and minerals from the date appellee became entitled thereto.

Appellant answered by general denial, and specifically that if the purported assignment was in fact executed by Van Cleave, said act was unauthorized by J. W. Murchison and was beyond the scope of authority of Van Cleave, for the reason that the power of attorney was a special power of attorney, not authorizing the assignment of any overriding royalty interest. Appellant further alleged that, the purported assignment having been made after the death of Gertrude Murchison (which occurred on April 25, 1961), J. W. Murchison no longer had authority to make a conveyance of community property; that even if the purported assignment would affect only the community interest of J. W. Murchison, it was invalid in that after the death of Gertrude Murchison, the only authority to pay debts and claims against the community estate of the Murchisons vested in J. W. Murchison as Independent Executor of the estate of his wife, and that the special power of attorney did not purport to authorize Van Cleave to act for the Independent Executor of the Estate of Gertrude Murchison; that the condition precedent to the assignment (that J. W. Murchison recover drilling costs) has not been met in that Murchison was entitled to recover more than $200,000 in costs and had recovered only $75,000; that Murchison did not own an entire one-eighth interest in all of the seven leases described in appellee's petition; that the assignment does not purport to convey an overriding royalty of one-eighth of eight-eighths, but for various reasons, merely purports to convey an interest in a fractional part of the oil, gas, and other minerals; and that appellant was entitled to a $22,543.89 credit on any amount due appellee, because of a payment made in that amount by appellant to appellee. Appellant also stated a counterclaim for the return of the $22,543.89.

Originally appellee's petition complained of J. W. Murchison individually and as Independent Executor and Trustee under the Will of Gertrude Murchison. Subsequently, C. W. Murchison, Jr., was substituted as Guardian of the Estate of J. W. Murchison. Then, upon the suggestion of the death of J. W. Murchison on February 28, 1974, the present appellant, as Independent Executor of the Estate of J. W. Murchison, was substituted as defendant. Previously, appellee had dropped J. W. Murchison, as Independent Executor and Trustee under the Will of Gertrude Murchison, as a party.

The trial court, following a hearing without a jury, rendered judgment in favor of appellee, declaring that appellee was entitled to an overriding royalty interest of one-eighth of eight-eighths in all the oil, gas, and other minerals produced, saved and sold from the tract of land, and ordering appellant to render a complete and. full accounting of all income and expenses from the oil production from said tract. Appellant has duly perfected its appeal to this court, bringing fifteen points of error.

At the outset we are met with a counterpoint by appellee, urging that we overrule appellant's first nine points of error, all of which concern the validity of the assignment, for the reason that appellant had judicially recognized that appellee has a legal interest in the property at issue. There is in the record a document entitled "Stipulation and Agreement," which states:

"WHEREAS, the above entitled and numbered cause [the present suit] is an action for declaratory judgment and involves a dispute between the parties thereto as to the ownership interest of the said W. R. KINABREW in and to certain oil and gas interest in Anderson County;

"WHEREAS, there is no dispute between the parties that the said J. W. MURCHISON is indebted to said W. R. KINABREW in some amount of money, the controversy involving only an accounting of the amount of money due Plaintiff, and the basis of calculation of what additional monies Plaintiff may be entitled to;

"WHEREAS, the said W. R. KINABREW desires to receive so much of said monies as are not indispute [sic] now being held by the said J. W. MURCHISON;

"NOW THEREFOR [sic], by and in consideration of the premises, the said W. R. KINABREW does hereby acknowledge receipt of the sum of TWENTY TWO THOUSAND FIVE HUNDRED FORTY THREE, AND 89/100 DOLLARS ($22,-543.89) of and from the said J. W. MURCHISON. It is understood and agreed by and between the parties that by the payment of such sum and the acceptance of such sum, neither party makes any admission or declaration against interest and the payment and acceptance of said sum or the method of arriving at same, shall not be entitled to any probative force in determining the controversy between the parties, save and except that it shall be offset against judgment [sic] to which the said W. R. KINABREW might otherwise be entitled.

"WITNESS the hands of the parties, by and through their respective attorneys of record this ____ day of June, 1973." The document is signed by attorneys for both parties.

It is appellee's contention that, by virtue of the above quoted stipulation, appellant has judicially admitted that appellee owns an interest in the property pursuant to the assignment and that the only controversy between the parties is the amount of money due appellee. Therefore, appellee urges that appellant has admitted the validity of the assignment.

In reply, appellant emphasizes the language of the document denying the making of any admission or declaration against interest by either party.

■■■ A judicial admission is a formal act, done in the course of judicial proceedings, which dispenses with the production of evidence and takes the matter out of the domain of proof so that neither court nor jury is required to make any finding in regard to it. *Valdes v. Moore*, 476 S.W.2d 936 (Tex.Civ.App.—Houston [14th] 1972, writ ref'd n. r. e.); 2 Texas Practice Series, McCormick and Ray, Evidence sec. 1127 at p. 24 (1956). A stipulation, similarly, is an agreement, admission, or concession made in a judicial proceeding by the parties thereto or their attorneys in respect to some matter incident thereto. 53 Tex.Jur.2d Stipulations sec. 1 at p. 313 (1964). Such a stipulation constitutes a contract between the parties and between the parties and the court. *Id.* A stipulation may relate to the matter of the issues to be tried, i. e., to fix, limit, or modify them. *Id.*, sec. 5 at p. 317; *Smith v. Leach*, 70 Tex. 493, 7 S.W. 767, 768

(1888); *W. T. Carter & Brother v. Ruth*, 275 S.W.2d 126, 129 (Tex.Civ.App.—Beaumont 1955, no writ). *State v. McHard*, 432 S.W.2d 182, 183 (Tex.Civ.App.—Houston [14th Dist.] 1968, writ ref'd n. r. e.). Inasmuch as a stipulation is a contract, the general rules for interpreting ordinary contracts are applied in construing stipulations, resort being had to the entire instrument, rather than to any specific part. 53 Tex. Jur. supra, sec. 14 at p. 327.

■ Appellant contends that the stipulation in no way acknowledges the validity of the assignment. It is true that the stipulation does not expressly state that the assignment is valid. That is immaterial, however, if the effect of the stipulation is to eliminate the validity of the assignment as an issue in the case. As noted, a stipulation clearly may limit the issues to be tried. The same point may be repeated in answer to appellant's contention that the stipulation may not be used to determine the legal issues raised by its points of error. This is not a stipulation relating to a matter of law, but rather one which limits the issues to be tried.

Appellant emphasizes the language of the document denying the making of any admission or declaration against interest. The disclaiming language, however, refers to the *act of paying* the sum of money and not to the entire document itself. It is not the entire document that is not to be taken as an admission or declaration against interest, but merely the *payment* of the amount indicated that is not to be so taken. The disclaiming language makes no reference to the foregoing statements that Murchison was indebted to appellee and that the only controversy was as to the amount of such indebtedness. The document does not state, and we do not construe it to mean, that the prior statements, in paragraph two of the stipulation, are to be deprived of their plain meaning. Appellant would have us consider the disclaiming language alone and disregard the second paragraph. We deem it proper to consider the entire document and to give effect to all of its terms. The document complies with the requirements of Rule 11, T.R.C.P. The statements that Murchison was indebted to appellee and that the controversy was to be limited to the single issue of the amount due appellee and the basis of calculation thereof, were effective, when made, as a stipulation, limiting the issues to be tried in the case to the single, named issue.

■ The record before us indicates that the document was a part of the record before the trial court, in that it was attached to appellee's request for admissions which was filed among the papers of the case, and, during the hearing, was admitted into evidence. Appellee, however, having secured such a stipulation, failed to mention it in his amended petitions and failed to argue its significance at the hearing. Indeed, appellee treated it as though it did not exist, arguing issues other than those to which the stipulation limited the controversy, specifically issues concerning the validity of the assignment. In such a situation, where it is clear that neither the parties nor the court treated the agreement as limiting the issues to be tried, and where the party who stood to gain the most from the stipulation (appellee) did not press its obvious import before the trial court for decision by that tribunal but waited to do so until the case was presented for appellate review, we are of the opinion that the stipulation should not be given effect here to limit the issues on appeal. *Carley v. Parton*, 75 Tex. 98, 12 S.W. 950, 952 (1889); See also *Gambill v. Snow*, 189 S.W.2d 33, 37 (Tex.Civ. App.—Eastland 1945, writ ref'd w. o. m.). Appellee's counterpoint one is overruled.

■ We now proceed with our consideration of appellant's points of error, the first of which asserts that Van Cleave's authority as agent had been terminated prior to his execution of the assignment. It is appellant's contention that Murchison's execution of the power of attorney created an agency relationship between Van Cleave, as agent, and both Murchison and Mrs. Murchison, as *joint* principals. In support of this contention, appellant claims that the power of attorney pertained to community property of the Murchisons, and that Murchison was

acting for the community estate in executing the power of attorney in that, under an existing statute (Article 4619, V.T.C.S., repealed in 1969), the husband had the sole right to dispose of community property. Appellant then argues that the death of one of two or more joint principals terminates the agency relationship as to all parties, and that since Mrs. Murchison died prior to Van Cleave's execution of the assignment, he was without authority to do so. We believe that appellee has correctly pointed out the fallacy in appellant's argument, viz., the power of attorney is not one executed by joint principals. It is signed by Murchison alone and there is no mention of Mrs. Murchison, as a joint principal or otherwise. Under existing law (Article 4619) Mrs. Murchison had no authority to dispose of community property; therefore, she had no power to do so through an agent. In *Arbuckle v. Arbuckle*, 214 S.W.2d 821 (Tex. Civ.App.—Waco 1948, writ ref'd n. r. e.), the court stated at p. 823:

"The law [Article 4619] [then provided] that during the coverture, the common property of the husband and wife may be disposed of by the husband alone, but it can be disposed of just as effectively when done by *his* agent with his full knowledge and consent." [Emphasis added.]

Thus, clearly, Van Cleave acted pursuant to the power of attorney as agent of Murchison alone. Furthermore, while the husband, at the time the agency here was created, was not held to be a general agent of the wife, 30 Tex.Jur.2d Husband and Wife sec. 50 at p. 83 (1962), Article 4619 was held to have made, in effect, the husband the agent of the wife insofar as the management, control, and disposition of community property was concerned. *Green v. Gomez*, 348 S.W.2d 185, 187 (Tex.Civ.App.— Eastland 1961, no writ). Thus, the relationship of Van Cleave to Mrs. Murchison was that of a subagent and not as an agent to a joint principal. Accordingly, we hold that the power of attorney signed by Murchison and dated January 23, 1961, created an agency relationship between Van Cleave, as agent, and Murchison, as sole principal. Appellant's first point of error is overruled.

In its second through fifth points of error appellant complains of the trial court's conclusion of law that the power of attorney was a general power of attorney, such being error (2) as a matter of law, (3) because there is no evidence to support it, (4) because there is insufficient evidence to support it, and (5) because it is against the greater weight and preponderance of the evidence. The power of attorney provides:

"THE STATE OF TEXAS     }       KNOW ALL MEN BY THESE PRESENTS

COUNTY OF BEXAR     }

"That I, J. W. Murchison, of said State and County, have made, constituted and appointed, and by these presents do make, constitute and appoint R. L. VAN CLEAVE, of the County of Henderson, State of Texas, my true and lawful attorney, for me and in my name, place and stead to make, execute, acknowledge, deliver and record any and all declarations of unit or unit agreement, creating units, for the drilling, developing, producing or operating oil, gas and mineral leases, and minerals, situated in Henderson and/or Anderson County, in the State of Texas, leases or agreements covering or pertaining to farmout agreements, any and all reports to, or forms of the Railroad Commission of Texas, to make, execute and deliver assignments of oil, gas and mineral leases, and conveyances of mineral or royalty interest which I might own or have any interest in, affecting or pertaining to any such property which I now own, or may hereafter acquire in Henderson or Anderson Counties, in the State of Texas, any and all such instruments to contain such agreement, terms and provisions as my said attorney shall deem proper, hereby giving and granting unto my said attorney full authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises, as fully, to all intents and purposes, as I might or could do if personally present.

"IN WITNESS hereof, I have here unto [sic] set my hand this 23rd day of January, A.D. 1961.

"/s/ J. W. Murchison
J. W. Murchison."

Appellant contends that the listing of specific acts which the attorney in fact is empowered by the instrument to perform, renders the power of attorney a special one. The distinction between a general and special agency, however, does not turn on any single factor. "In determining whether an agent is a general agent or a special agent, the number of acts to be performed in accomplishing an authorized result, the number of people to be dealt with, and the length of time needed to accomplish the result are the important considerations. Continuity of service rather than the extent of discretion or responsibility is the hall-mark of the general agent." Restatement of the Law, Agency 2d sec. 3 at p. 15 (1958). The nature and extent of the authority granted must be ascertained from the instrument granting the power of attorney and such instrument is to be strictly construed to limit the authority of the attorney in fact. *Gittings, Neiman-Marcus, Inc. v. Estes*, 440 S.W.2d 90, 93 (Tex.Civ. App.—Eastland 1969, no writ). The rule that the powers of the attorney in fact are measured strictly by the terms of the grant and necessary implications therefrom, however, does not preclude the court from ascertaining the object of the language. *Lawrie v. Miller*, 45 S.W.2d 172, 173 (Tex. Comm'n App.1932, holding approved). Powers of attorney must be construed as a whole to ascertain the parties' intentions and rights. *Mook v. Humble Oil & Refining Co.*, 182 S.W.2d 255, 259 (Tex.Civ.App. —Fort Worth 1944, writ ref'd w. o. m.). A general agent is one empowered to transact all the business of his principal of a particular kind or in a particular place. *Great American Casualty Co. v. Eichelberger*, 37 S.W.2d 1050, 1052 (Tex.Civ.App.—Waco 1931, writ refused). Thus, a general agent is not necessarily one with unlimited powers but rather one with broad powers within a defined area. Applying these rules to the instant case, we agree with the trial court

that the agency created by the instrument in question is a general one. By virtue of the instrument, Van Cleave was given very broad powers with respect to mineral interests owned or to be acquired by Murchison in the two named counties.

Appellant argues further that a delegated authority to convey does not include the power to convey in the settlement of debts, unless specifically so authorized, citing *Gouldy v. Metcalf*, 75 Tex. 455, 12 S.W. 830, 831 (1889), and *Frost v. Erath Cattle Co.*, 81 Tex. 505, 17 S.W. 52, 54 (1891). Manifestly, however, such rule applies only to special powers of attorney.

If we be in error in our determination that the agency created by the instrument in question was a general agency, we nevertheless hold that Van Cleave, even as a special agent, was granted the specific authority to convey the overriding royalty interest to appellee. The power of attorney contained language empowering Van Cleave to execute "conveyances of mineral or royalty interest." An overriding royalty interest is a royalty interest. *McMahon v. Christmann*, 157 Tex. 403, 303 S.W.2d 341, 344 (1957); *Delta Drilling Co. v. Simmons*, 161 Tex. 122, 338 S.W.2d 143, 147 (1960); Williams & Meyers, Oil and Gas Law, Manual of Terms at p. 511 (1978). Furthermore, we are of the opinion that, even if Van Cleave is not properly considered a general agent under the terms of the power of attorney, Murchison, through said instrument, so clothed Van Cleave with indicia of authority as to lead a reasonably prudent person to believe that he actually had the authority to make the conveyance here disputed. This apparent authority is based upon principles of estoppel. See *Roberts v. California-Western States Life Insurance Co.*, 470 S.W.2d 719, 724 (Tex.Civ.App.— Amarillo 1971, no writ); *Hearn v. Hanlon-Buchanan, Inc.*, 179 S.W.2d 364, 368 (Tex.

Civ.App.—Fort Worth 1944, writ ref'd w. o. m.).

Accordingly, appellant's second point of error is overruled.

The trial court concluded that the power of attorney was unambiguous and that conclusion has not been challenged here. Where the terms of an instrument are unambiguous, the question before the court is purely a law question; the inquiry becomes a mixed question of law and fact only where the words contained in the instrument are ambiguous. *Lawrie v. Miller,* supra; *Kent v. Ryan,* 20 S.W.2d 1099, 1103 (Tex.Civ.App.—Waco 1929), reversed on other grounds, 36 S.W.2d 1007 (Tex.Comm'n App.1931, judgment adopted); *Pippin Bros. v. Thompson,* 292 S.W. 618, 619 (Tex.Civ. App.—Waco 1927, writ dism'd). In the instant case, the question with regard to the power of attorney being general or special in nature is a question of law. Appellant's attack on the trial court's conclusion that the power of attorney is general, therefore, is not properly predicated upon issues of the legal or factual sufficiency of the evidence to support such conclusion. The trial court necessarily draws its conclusions of law from the facts as it finds them. The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them; its conclusions of law are reviewable when attacked as erroneous as a matter of law, but not when attacked on grounds of sufficiency of the evidence to support them, as if they were findings of fact. Appellant's points of error three, four, and five are overruled.

In its sixth through ninth points, appellant urges that the trial court's holding that Murchison ratified the assignment is erroneous (6) as a matter of law, (7) because there is no evidence in support thereof, (8) because there is insufficient evidence to support such holding, and (9) because it is against the great weight and preponderance of the evidence. The trial court stated, both as a finding of fact and as a conclusion of law that the acts of Van Cleave, as agent, in executing and delivering the assignment were ratified by Murchison by implication in the latter's subsequent correspondence with appellee, apparently relying upon two letters from Murchison to appellee, dated September 9 and October 11, 1971, in which Murchison referred to "your [appellee's] overriding royalty interest on [sic] the Cely-Henderson Unit in the Fairway Pool" and to "your [appellee's] interest in the Cely Henderson Unit," and upon the aforementioned stipulation which states that this cause "involves a dispute between the parties thereto as to the ownership interest of the said W. R. KINABREW in and to certain oil and gas interest in Anderson County . . . ." In the October 11 letter it is apparent that Murchison disputed the size of the interest conveyed to appellee, stating that it was "⅛ of my interest" rather than ⅛ of the entire production, but Murchison did not dispute that appellee owned an interest.

Inasmuch as we have determined that the assignment by Van Cleave to appellee was valid, it is not necessary that we address appellant's points of error complaining of the trial court's conclusion that Murchison had ratified the act of Van Cleave in making the assignment. Ratification applies only with regard to unauthorized acts done in behalf of the person alleged to have ratified them. Where the acts of an agent are within the powers conferred on him by his principal, ratification of such acts is not essential. *Graham v. Edwards,* 99 S.W. 436 (Tex.Civ.App.— Fort Worth 1907, no writ); See also *Humphrey v. Southport Petroleum Co.,* 131 S.W.2d 395, 396 (Tex.Civ.App.—Texarkana 1939, no writ); *Kunkel v. Kunkel,* 515 S.W.2d 941, 948 (Tex.Civ.App.—Amarillo 1974, writ ref'd n. r. e.).

In its tenth point of error, appellant contends that the trial court erred in finding as a fact that the phrase "herein described premises," as used in the assignment instrument, refers to the seven leases listed in the assignment, yet concluding as a matter of law that the phrase refers to a tract of land. The assignment instrument contains

no description of a tract or tracts of land; rather, it lists seven oil, gas, and mineral leases. The entire text of the assignment is as follows:

### "ASSIGNMENT OF OVERRIDING ROYALTY

THE STATE OF TEXAS
COUNTY OF HENDERSON

KNOW ALL MEN BY THESE PRESENTS, THAT;

"WHEREAS, on the 14th day of March 1961, a certain oil, gas and mineral lease was made and entered into by and between W. D. C. LUCY et al lessor, and J. W. MURCHISON lessee, said lease being recorded in Vol. 623 page 97 of the deed records of Anderson County Texas; and

"WHEREAS on the 14th day of March 1961, a certain Oil, gas and mineral lease was made and entered into by and between Mrs LETITIE [sic] SCHOOLFIELD et al, lessor and J. W. MURCHISON lessee, said lease being recorded in Vol. 623 page 101 of the deed records of ANDERSON COUNTY TEXAS; and

"WHEREAS, on the 14th day of March 1961, a certain Oil, gas, and mineral lease was made and entered into by and between FIRST CITY NATIONAL BANK OF HOUSTON et al lessor and J. W. MURCHISON lessee, said lease being recorded in Vol. 623 page 105 of the deed records of ANDERSON COUNTY TEXAS; and

"WHEREAS, on the 14th day of March 1961, a certain Oil, Gas and mineral lease was made and entered into by and between ISAAC ADAMS JACKSON lessor, and J. W. MURCHISON lessee, said lease being recorded in Vol. 623 page of 103 of the deed records of ANDERSON COUNTY TEXAS; and

"WHEREAS, on the 1st day of April 1960, a certain Oil, Gas and mineral lease was made and entered into between BONNIE RUTH CELY SHOULTS and husband D. P. CELY et al, lesser [sic] and J. W. MURCHISON lessee, said lease being recorded in Vol. 610 page 10 of the deed records of Anderson County Texas; and

"WHEREAS, on the 1st day of April 1960, a certain Oil, gas and mineral lease was made and entered into between W. D. CLEVELAND REALTY Co, a texas [sic] corporation lessor, and JOHN MURCHISON lessee, said lease being recorded in Vol. 610 page 8 of the deed records of ANDERSON COUNTY TEXAS; and

"WHEREAS, on the 29th day of April 1961, an Oil and gas and mineral lease was made and entered into by and between RAY PERRY lessor and J. W. MURCHISON lessee, said lease being recorded in Vol. 625 page 294 of the deed records of ANDERSON COUNTY TEXAS; and

"WHEREAS, said leases and all rights thereunder or incidental thereto are now owned by J. W. MURCHISON;

"NOW, THEREFORE, for and in consideration of the sum of TEN and no/100 Dollars ($10.00), and other good and valuable considerations, the receipt and adequacy of which are hereby acknowledged, the undersigned has bargained, sold and conveyed, and does by these presents Bargain, Sell and Convey unto W. R. KINABREW of Athens Texas, an overriding royalty equal to ONE EIGHTH of EIGHT EIGHTS [sic] (⅛ of ⅝) of all of the Oil, Gas, and other minerals which may be produced, marketed, and saved from the herein described premises, free and clear of all costs of development and operation

"It is understood between the Assignor and the Assignee herein, that this conveyance shall not be effective until the said J. W. MURCHISON has recovered from the sale of Oil, gas or other minerals produced from said land, an amount equal to the costs of drilling, completing and operating any well or wells drilled on said land.

"The said J. W. MURCHISON agrees to furnish to W. R. KINABREW an annual statement showing total amounts spent and total amounts rec,d [sic] and to Notify the purchaser of the Oil gas or other minerals, when said money has been recovered, equaling all costs as set out above.

"This assignment is made without warranty of title, either express or implied.

"IN WITNESS WHEREOF, this instrument is executed this 15th day of MAY, 1961.

> J. W. MURCHISON
> By /s/ R. L. Van Cleave
> Agent and Attorney in fact"

---

It is appellant's contention that the phrase "herein described premises" refers to the seven leases, that one must go beyond the assignment (i. e., to the leases themselves) to find a tract of land described, and that therefore the interest conveyed by the assignment is ⅛ of ⅝ of Murchison's interest in the leases, and not ⅛ of the entire production from the 120.3-acre tract. Appellee contends that the language of the assignment was effective to convey an overriding royalty of ⅛ of the entire production from the tract upon which the leases were made.

The trial court concluded and both parties assert here that the assignment is unambiguous. We must therefore carry out the intentions of the parties as of the time the instrument was executed, even though its meaning may be in certain particulars unclear. *Pierson v. Palestine Contractors, Inc.*, 559 S.W.2d 908, 911 (Tex.Civ. App.—Tyler 1977, writ ref'd n. r. e.). Where the terms of an instrument are unambiguous, any construction placed thereon by the parties different from that disclosed by the instrument itself is immaterial and cannot affect the determination of the court when construing it. *Caraway v. Owens*, 254 S.W.2d 425, 427 (Tex.Civ.App.— Texarkana 1953, writ refused); *Black v. Shell Oil Co.*, 397 S.W.2d 877, 887 (Tex.Civ. App.—Texarkana 1965, writ ref'd n. r. e.). In ascertaining the intention of the parties to an instrument such as that with which we are concerned, the question is not determined by the intention which the parties may have had but failed to express, but the intention which, by the instrument, they did express. *First National Bank of Snyder v. Evans*, 169 S.W.2d 754, 756 (Tex.Civ.App.— Eastland 1943, writ refused); *Davis v. Andrews*, 361 S.W.2d 419, 423 (Tex.Civ.App.— Dallas 1962, writ ref'd n. r. e.). See also *Smith v. Liddell,* 367 S.W.2d 662, 665–6 (Tex.1963); *Bass v. Harper*, 441 S.W.2d 825, 827 (Tex.1969).

Applying these rules to the instant case, we are of the opinion that the assignment was effective to convey an overriding royalty interest of ⅛ of the entire production of oil, gas, and other minerals from the entire 120.3-acre tract of land. The term "herein described premises" clearly refers to the tract of land, as described in the leases for each of which volume and page number references in the deed records of Anderson County were made in the instrument. The description of land in a conveyance of an interest therein must be so definite and certain upon the face of the instrument itself, *or by other writing referred to*, that the land can be identified with reasonable certainty. *Smith v. Sorelle*, 126 Tex. 353, 87 S.W.2d 703, 705 (1935). See also *Haile v. Holtzclaw*, 414 S.W.2d 916, 927–8 (Tex.1967); *Rice v. Cook*, 367 S.W.2d 386, 389 (Tex.Civ.App.—Austin 1963, writ ref'd n. r. e.). There is no contention here that the leases referred to in the assignment do not adequately describe the land. There was no dispute that all seven leases pertain to the 120.3-acre tract. The trial court found, "The Leases cover an undivided leasehold interest in the 120.30 acres comprising an oil unit identified as the Cely-Henderson Unit . . . ." That finding has not been challenged here. Moreover, we feel that the word "premises" refers to a distinct portion of real property. *Ruble v. Ruble*, 264 S.W. 1018, 1019 (Tex. Civ.App.—Waco 1924, no writ), See also Black's Law Dictionary (4th ed. 1968) at p. 1344. There is no other language in the assignment which limits or which might be construed to limit the ⅛ overriding royalty interest to apply to less than the entire

tract and its entire production. To the contrary, the instrument states, "an overriding royalty equal to ONE EIGHTH OF EIGHT EIGHTS [sic] (⅛ of ⅝) of *all* the Oil, Gas, and other minerals which may be produced, marketed, and saved from the herein described premises . . . ." [Emphasis added.] The words "said *land*" [emphasis added] are used twice in the succeeding paragraph. Where a fraction designated in a conveyance is stated to be a royalty interest in land described in the deed, the fraction is to be calculated upon the production of the entire tract. See *Middleton v. Broussard*, 504 S.W.2d 839, 842 (Tex.1974). Even if we were to find that the words at issue were ambiguous, we would reach the same conclusion because an instrument conveying an interest in minerals, if ambiguous, is construed against the grantor. *Hoffman v. Magnolia Petroleum Co.*, 273 S.W. 828, 829 (Tex.Comm'n App.1925, holding approved); *Davis v. Andrews*, supra; *Loeffler v. King*, 228 S.W.2d 201, 204 (Tex.Civ.App.—Fort Worth 1950), reversed on other grounds, 149 Tex. 626, 236 S.W.2d 772 (1951). We do not consider as conflicting the trial court's finding of fact that "herein described premises" refers to the seven leases and its conclusion of law that the phrase refers to the tract of land. The reference to the leases is not a reference to a partial interest in them but rather to the "premises," i. e., land, described therein. Appellant's tenth point of error is overruled.

In its eleventh and twelfth points of error, appellant asserts error by the trial court in that there is no evidence and insufficient evidence, respectively, to support the holding by that court that appellee is entitled to a greater revenue interest (0.125 or ⅛) than Murchison owned on the date of the assignment. Appellee points out, however, and we agree, that the assignment is not limited by its terms to the interest that Murchison owned on the date the assignment was executed or subsequent thereto. See *Bass v. Harper*, supra. Manifestly, one may purport to convey a greater interest than one owns in the property which is the subject of the conveyance. Here, however, as discussed infra, we do not believe Murchison owned a lesser interest than he conveyed, through his agent, by the assignment. Furthermore, we have determined as a matter of law that the assignment was effective, according to its unambiguous terms, to convey to appellee an overriding royalty interest of one-eighth of the entire production from the tract. The construction to be given an unambiguous instrument is a question of law and not of fact. *Young v. De La Garza*, 368 S.W.2d 667, 670 (Tex.Civ.App.—Dallas 1963, no writ). Points of error which question the legal or factual sufficiency of the evidence to support the trial court's action, therefore, raise no issue for our consideration on appeal. The eleventh and twelfth points of error are overruled.

Appellant's thirteenth point contends that, as a matter of law, Gertrude B. Murchison's interests in the seven leases could not be looked to in determining whether payout had been reached. This is an attack on the trial court's conclusion of law that, since the assignment was made in discharge of a community debt of J. W. and Gertrude Murchison, the total net revenue interest of J. W. Murchison and the estate of Gertrude Murchison is to be considered in computing the recoupment of development and operating expenses by the assignor. In its argument in its brief under said point, which was combined with several other points for discussion, appellant fails to address the issue presented by this point and cites no authorities therefor. Irrespective of that, however, we find no merit in appellant's contention. As noted supra, the husband, at the time of the assignment in this case, had sole power to manage the community property. The husband also, as community survivor, was competent to discharge community debts. In the absence of fraud, a conveyance of community property by the surviving husband would be sustained where a community debt existed at the time it was made, and whether the discharge of debts was done in his own name or in his name as survivor was immaterial. *Griffin v. Stanolind Oil & Gas Co.*, 133 Tex. 45, 125 S.W.2d 545, 548 (Tex.

Comm'n App.1939, opinion adopted); See also *Davis v. Magnolia Petroleum Co.*, 134 Tex. 201, 134 S.W.2d 1042, 1044 (Tex. Comm'n App.1940, opinion adopted); *Walston v. Gibson*, 141 S.W.2d 997, 999 (Tex. Civ.App.—Galveston 1940, writ refused). In view of these rules, we find no error in the trial court's conclusion and overrule appellant's thirteenth point.

By its fourteenth point, appellant contends there is no evidence to support the trial court's holding that Murchison and his wife's estate owned, at all times from the date of the assignment to the date of hearing, a net revenue interest in the tract of not less than 0.2768876. Appellant contends that Murchison owned at most a net revenue interest of 0.12288705 in the production from the Cely-Henderson unit at that time. The trial court found as facts that the total net revenue interest of Murchison and wife for purposes of computing the payout date is 0.2768876 as recognized and ratified by Murchison in October 1971, and that at all times from the date of the assignment to the date of the hearing below, Murchison and his wife's estate owned a net revenue interest of not less than the same figure. Appellee argues that the interest of Murchison in the tract of land is not an issue in this suit for a declaration of the extent of the assignment made by Murchison, through Van Cleave, to appellee. We do not agree. The trial court determined that appellee was assigned one-eighth of the entire production from the tract, regardless of what Murchison's interest in the tract was, on the date of the assignment or subsequently. Appellee prayed, however, for an accounting as well as for a declaration of the rights of the parties under the assignment, and the accounting of the amount due appellee will require a determination of Murchison's interest.

Appellant relies upon appellee's admissions that the undivided community interest of Murchison in the first, second, and third leases listed in the assignment was 0.079833325, and that neither Murchison nor his wife had acquired any interest as of the date of the assignment in the fourth and sixth leases. Appellant further contends that, with respect to the fifth lease, Murchison had assigned it, on September 8, 1960, to the Fairway Operating Co., Inc.; thus, neither Murchison nor his wife owned any interest in it on the date of the assignment. Concerning the seventh lease, appellant asserts that, although the trial court made no finding as to Murchison's interest therein, said interest was either 0.0430538 (if he owned it as his separate property) or 0.0215269 (if it were community property). Appellee points out that Murchison retained a reversionary interest in the fifth lease, i. e., if Fairway failed to drill a well within a specified period, it would revert to Murchison, and that it did, in fact, so revert, apparently giving him a 0.169 interest therein. It is appellant's contention that the total net revenue interest of Murchison, individually, in the Cely-Henderson Unit was 0.2288705 at most.

All of the arguments over Murchison's specific interests in the individual leases aside, it is apparent that the trial court relied upon the attachment to Murchison's letter of October 11, 1971, to appellee. That attachment is an accounting of the well cost and payout status for the Cely-Henderson tract as of July 31, 1971, and it clearly indicates that the interest of J. W. Murchison was 0.2768876. In considering a "no evidence" point, an appellate court will not disturb the fact findings of the trial court if there is some evidence of probative force to support the same, viewing the evidence in the light most favorable to the successful party and indulging every legitimate conclusion that is favorable to him. *American Bankers Insurance Co. v. Farley*, 403 S.W.2d 545, 547 (Tex.Civ.App.—Fort Worth 1966, no writ); see also *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). We conclude that there is some evidence of probative force to support the trial court's finding complained of in appellant's fourteenth point of error, which, accordingly, we overrule.

The final point of error of appellant states that the court below erred in failing

to find that appellant's interest in lease number seven was a net revenue interest of 0.0215269. Appellant's request that the court make such a finding was refused. In view of our disposition of the previous points of error, we deem this point to be immaterial.

The judgment of the trial court is affirmed.