**Lucien GUIDROZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–81–00155–CR.**

Court of Appeals of Texas,
San Antonio.

Aug. 29, 1984.

Rehearing Denied Oct. 22, 1984.

Charles D. Butts, San Antonio, for appellant.

Bill White, Bill Blagg, Keith F. Fahlberg, San Antonio, for appellee.

Before CADENA, C.J., and CANTU and TIJERINA, JJ.

## OPINION

CADENA, Chief Justice.

A jury found appellant guilty of murder, after he had entered a plea of not guilty by reason of insanity. He was sentenced to 99 years' imprisonment.

We consider first appellant's claim that the trial court erred in denying his motion that the jury be instructed to find him not guilty by reason of insanity because the State had stipulated that at the time of the alleged offense he was legally insane as that term is defined in section 8.01 of the Texas Penal Code in that "... as a result of mental disease and defect, [he] was incapable of conforming his conduct to the requirements of the law he is alleged to have violated in the indictment." We find no such stipulation in the record.

After a jury had found that appellant was incompetent to stand trial, he was committed to a state hospital. After his release from the hospital some six months later, the court found that he was competent to stand trial. Seven months later a jury again found that appellant was incompetent to stand trial and he was again committed to a state hospital, from which he was released seven months later. It was at the termination of this second competency hearing that the stipulation on which appellant relies was made.

About a month after his second release, after a jury had found him competent to stand trial, appellant was found guilty of murder and his punishment set at 99 years' imprisonment. Because of further proceedings concerning appellant's competency, he was not sentenced until about eight months following the finding of guilt.

The stipulation in question is no more than an agreement that, as of some eight months prior to the trial, "all of the evidence known to the State and all doctors report that" appellant was legally insane, as that term is defined in section 8.01, at the time of the offense. The stipulation also provided that the stipulation, doctors' reports and other testimony introduced at the competency hearing would be admissi-

ble in all future proceedings concerning the offense for which appellant had been indicted.

It must be borne in mind that the hearing in quesiton was limited to determination of appellant's competency to stand trial. The question of appellant's mental condition at the time of the offense was, at most, only peripherally relevant at that time. The State presented no evidence concerning appellant's mental condition on the date of the offense. The stipulation merely recited that as of the time of the stipulation all of the evidence known to the State, which was the testimony presented by appellant at the hearing, was to the effect that appellant was legally insane on the date of the offense. Nowhere in the stipulation does the State admit that appellant was legally insane on the date of commission of the offense.

The meaning of the stipulation is so clear that, at the trial, appellant's counsel conceded that he had not understood that the State had agreed that appellant was insane at the time of the offense.

■ The trial court did not err in refusing to instruct the jury to find appellant not guilty by reason of insanity nor, in view of the nature of the stipulation, did the trial court err in permitting the State to introduce evidence that appellant was not legally insane at the time of the offense.

Appellant challenges the sufficiency of the evidence to support the conviction. Although this contention is phrased in terms of the State's failure to prove that he intentionally or knowingly killed his wife, it is clear that he relies solely on his plea of insanity to negative the existence of the required culpable mental state.

Under section 8.01, insanity is an affirmative defense and the burden was on appellant, under section 2.04 of the Penal Code, to establish the existence of the defense by a preponderance of the evidence. Under the record in this case, appellant's contention that the evidence is insufficient to establish the required culpable mental state is technically incorrect, since, as already pointed out, it rests solely on the existence of a fact—legal insanity—which appellant had the burden of proving. Appellant's point, since it assumes that the State had the burden of proving that appellant was not legally insane, misplaces the burden of proof. However, we shall treat appellant's points concerning the quantum of the evidence as embodying the contention that he established his legal insanity at the time of the offense as a matter of law.

■ All of the medical experts testified that appellant was legally insane at the time of the offense. But expert testimony, even if uncontradicted, does not establish insanity as a matter of law. Such unrebutted testimony only raises an issue of fact to be resolved by the trier of fact. *Graham v. State*, 566 S.W.2d 941, 949–50 (Tex.Crim. App.1978). Even if we were to adopt the indefensible position that appellant's claim that insanity was conclusively established can be determined by considering only the evidence supporting a finding of insanity and disregarding all evidence to the contrary, appellant's contention is without merit.

Several non-expert witnesses testified at length concerning appellant's behavior. All agreed that he never exhibited unusual, peculiar or irrational behavior. Although the experts testified that a man suffering from the mental defect they attributed to appellant could not render satisfactory performance on the job, the testimony of appellant's employer was that appellant performed his duties in a satisfactory manner and had done nothing to create any problems. The evidence showed that appellant read many books on the subject of mental illness and was familiar with symptoms of such illness. In fact, he had boasted to several persons that he had secured his discharge from the military service by pretending to be insane.

The medical experts based their diagnoses on their observations of appellant after the date of the offense. They relied strongly on his irrational behavior and statements. However, several lay witnesses testified emphatically that appellant had

not behaved in such fashion prior to or at the time of the killing.

Although no witness testified, in so many words, that appellant was sane, the testimony of his family and acquaintances painted a picture of a person who acted normally at all times, was well acquainted with behavior patterns of the mentally ill, and boasted that he could successfully feign insanity and had duped military doctors into discharging him because they believed that he was mentally ill.

While the medical testimony would have supported a finding of insanity, there is abundant testimony to support the conclusion that appellant's strange behavior after the killing, which formed the basis for the conclusions of the experts, was the manifestation of a deliberate effort by appellant to manufacture the defense of insanity and was completely at variance with his behavior prior to the killing of his wife. The testimony of the lay witnesses concerning the absence of strange, unusual or bizarre behavior by appellant becomes more persuasive when viewed in the light of the statement by one of the experts that if a person was "floridly, overtly psychotic," as was appellant, those with whom he associated would recognize easily that he was mentally ill.

■ We cannot conclude that the verdict of the jury is so against the great weight and preponderance of the evidence as to be manifestly unjust.

■ The trial court's charge contained a definition of the word "individual," although that word was not used in the indictment. We are unable to imagine how the definition of "individual" could prove harmful, even if we should agree that it was, in fact, error to include such definition in the charge.

■ In the course of the argument during the guilt stage of the trial, the prosecutor told the jury that appellant had not attempted to commit suicide but had merely "staged" a hanging to bolster his insanity defense. Appellant's objection to this statement was sustained and, at appellant's request, the jury was instructed to disregard the statement. No motion for mistrial was made. Since appellant received all of the relief he requested, nothing is presented for our consideration. *Gleffe v. State,* 509 S.W.2d 323 (Tex.Crim.App.1974).

■ During the same argument, the prosecutor asked the jury to read the report of Dr. Grigson to see if there was anything in the report indicating that Dr. Grigson had found that appellant was insane at the time of the commission of the offense. This argument was not improper in view of the evidence which was before the jury. *See Todd v. State,* 598 S.W.2d 286 (Tex.Crim.App.1980). We find nothing in the record supporting appellant's contention that the prosecutor was attempting to "hoodwink" the jury.

■ The trial court overruled appellant's second motion in bar of sentencing and imposed sentence without a further hearing to determine appellant's competency. No new evidence of incompetency was presented in support of such second motion. In the absence of such new evidence, the trial court did not err in overruling the motion. *Vigneault v. State,* 600 S.W.2d 318 (Tex.Crim.App.1980).

The judgment of the trial court is affirmed.

TIJERINA, Justice, dissenting.

I respectfully dissent.

In the case at bar, on three separate occasions appellant was found by a jury to be incompetent to stand trial and was committed to Rusk State Hospital. The diagnosis by Dr. Richard Cameron, the county psychiatrist, Dr. James P. Grigson, and Dr. Betty Lou Schroeder, county clinical psychologist, was schizophrenia, paranoid type, and that *appellant was legally insane on the date of the commission of the offense.* The *stipulation* between the State and appellant's attorney that appellant was legally insane at the time of the commission of the offense as the term is defined under TEX.PENAL CODE ANN. § 8.01, *supra,* states in part:

[T]hat immediately prior to such date and specifically on such date of July 4, 1976, and at the time of the offense set forth in the indictment herein, said defendant, as a result of mental disease and defect, was incapable of conforming his conduct to the requirements of the law that he is alleged to have violated in the indictment herein. It is agreed ... that such stipulation ... will be admissible in any and all future Court proceedings concerning this offense....

This stipulation was approved by the court.

In *Graham v. State*, 566 S.W.2d 941 (Tex.Crim.App.1978), the appellant had only one previous commitment to a State mental hospital, and his state of mind after the offense was rational in that he expressed remorse, apologized to his victim, and drove her to within one block of her residence. In the instant case, following the murder of the victim, appellant was found inside a trash dumpster with both his wrists slashed, unable to communicate. Police Sergeant James Calvert testified:

Q: A bizarre and unusual thing was finding him lying with his wrists cut and covered with garbage?

A: That's what I saw, yes, sir.

Appellant cites *Kiernan v. State*, 84 Tex. Crim. 500, 208 S.W. 518 (1919) as authority supporting his contention of insufficient evidence to establish beyond a reasonable doubt the necessary culpable mental state. In *Kiernan*, five physicians testified that the appellant was insane; other witnesses testified as to facts immediately before and after the killing, but none were asked as to appellant's mental condition. Further, the State did not put on any witnesses to prove the sanity of appellant. The Court stated:

We are loath to disturb the case on the finding on the facts, and do not believe we should do so in cases where there is merely conflict of testimony; but when we are convinced that the verdict is clearly against the overwhelming weight and preponderance of the testimony, we do not feel at liberty to close our eyes to that fact out of deference to the verdict of the jury.

\* \* \* \* \* \*

Our merciful and just law makes it a necessary condition precedent to guilt that the act must have been that of a sane man, and not that of one irresponsible, and when all the witnesses on that point ... agree as to the fact of appellant's insanity, and there is absolutely no contradiction of that fact in the record, we cannot allow the conviction to stand. *Kiernan v. State*, 208 S.W. at 519.

In the case at bar, the entire medical history and records with the stipulations by the State and appellant as to appellant's mental condition, were admitted as evidence. The record clearly shows that *the State did not ask any of the State's witnesses for an opinion as to appellant's sanity.*

Appellant further contends that the evidence is insufficient to support a conviction under the due process clause of the Fourteenth Amendment to the United States. Constitution. In *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), the Supreme Court held that the Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction, "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. at 364. The *Winship* decision thus stands for the proposition that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof—defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense. In *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, (1979), the United States Supreme Court stated: "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. at 319, 99 S.Ct. at 2789.

Here an essential element of the offense of murder is the culpable mental state of appellant at the time of the commission of the offense, i.e., that he, appellant, intentionally and knowingly murdered the victim. I have viewed the evidence in the light most favorable to the prosecution and find, after considering the entire record, that there was insufficient evidence to establish beyond a reasonable doubt the culpable mental state of appellant. I would sustain appellant's grounds of error number one, two, and three.

The fourth and fifth grounds of error are concerned with the effect of the stipulation, by the parties, on the insanity question. Appellant contends the court erred in admitting evidence in contravention of the stipulation, and that the stipulation established as a matter of law the fact of appellant's insanity.

In addressing this specific question we learn from 9 J. WIGMORE, EVIDENCE §§ 2588, 2590 (1981), the following:

An express waiver made in court or preparatory to trial by the party or his attorney conceding for the purposes of the trial the truth of some alleged fact, has the effect of a confessory pleading, in that the fact is thereafter to be taken for granted; so that the one party need offer no evidence to prove it and the other is not allowed to disprove it. This is what is commonly termed a solemn ... or *judicial admission* or *stipulation*.... The vital feature of a judicial admission is universally conceded to be its *conclusiveness* upon the party making it, i.e., the prohibition of any further dispute of the fact by him and of any use of evidence to disprove or contradict it.

The stipulation between the State and appellant specifically states that appellant was legally insane at the time of the commission of the offense as the term is defined by TEX.PENAL CODE ANN. § 8.01, *supra,* and further provides that the stipulation will be admissible in any and all future court proceedings concerning the offense. The trial court had previously approved this stipulation and it was admitted as part of the record without objection. The Supreme Court in *Gevinson v. Manhattan Construction Co.,* 449 S.W.2d 458, 466 (Tex.1969) has pronounced the Texas rule on this question as follows:

A true judicial admission is a formal waiver of proof and is usually found in the pleadings or in a stipulation of the parties .... The vital feature of a judicial admission is its conclusiveness on party making it. It not only relieves his adversary from making proof of the fact admitted but also bars the party himself from disputing it. [Authority omitted]

It thus appears that courts will not release parties from a stipulation unless it is shown that the matter stipulated is untrue. In the instant case the State did not withdraw the stipulation, and once a matter is stipulated, it should not be inquired into further unless vacated by consent or set aside by the court. *Valdes v. Moore,* 476 S.W.2d 936, 940 (Tex.Civ.App.—Houston [14th Dist.] 1972, writ ref'd n.r.e.), held that a judicial admission establishes the admitted element as a matter of law. I conclude that the State agreed to the fact of appellant's insanity at the time of the commission of the offense and was thus bound by the stipulation, and that the stipulation as approved by the court established appellant's insanity as a matter of law. Accordingly, having found the evidence insufficient, I would reverse and order appellant discharged. *See Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).