Anthony Quinn BROOKS, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–86–059–CR.

Court of Appeals of Texas,
Waco.

Oct. 23, 1986.

Rehearing Denied Nov. 20, 1986.

Discretionary Review Refused
Feb. 18, 1987.

F.B. McGregor, McGregor & McGregor, Inc., Hillsboro, for appellant.

Dan V. Dent, Dist. Atty., Hillsboro, for appellee.

HALL, Justice.

Waiving a trial by jury and pleading not guilty by reason of insanity, appellant Anthony Quinn Brooks was convicted by the court for the offense of aggravated assault. ·Punishment was assessed at confinement in the Department of Corrections for sixteen years. We affirm the judgment.

In two points of error appellant challenges the sufficiency of the evidence in light of his affirmative defense of insanity, and the admission of his statement into evidence.

It is undisputed that appellant struck a 76 year-old man in the face with a broken broom handle on May 23, 1985, in the Hill County Courthouse. The record reflects that a few minutes prior to the incident, appellant went to the office of his probation officer, Nell Ward, at her request. During their visit, Mrs. Ward stressed the importance of appellant's procuring employment so that he could pay his fine and restitution for throwing a brick through a MHMR window. In response, appellant asked if he could go to jail instead so that he would not have to find a job. When Mrs. Ward replied that she could not arrange that, appellant left the office while making obscene comments. Although Mrs. Ward described him as "very, very agitated," he did not attempt to harm her or the two young men in the office. After appellant left, she heard a can being kicked against the office door and appellant shouting obscenities. Within minutes, appellant accosted the complainant, a complete stranger, who had just walked from the county tax office. Appellant stated, "I want my money." The complainant responded, "What money?" Appellant then repeated the remark and the complainant, thinking that appellant was joking, re-

sponded "They got mine, too," referring to the tax office. Appellant then said, "I'm going to split your head" and proceeded to break a broom handle that he had in his hand over his knee. He then struck the complainant across the face and arm with the jagged edge causing lacerations and injuries. Appellant escaped and was later arrested at his home.

Insanity is an affirmative defense and the accused has the burden of proof by a preponderance of the evidence. V.T.C.A., Penal Code § 8.01(a); *Thompson v. State*, 612 S.W.2d 925, 929 (Tex.Cr.App.1981); *Graham v. State*, 566 S.W.2d 941, 943 (Tex.Cr.App.1978). *See also Van Guilder v. State*, 709 S.W.2d 178, 180–81 (Tex.Cr. App.1985); *Thomas v. State*, 701 S.W.2d 653, 661 (Tex.Cr.App.1985). The State is not required to negate the existence of such affirmative defense, V.T.C.A., Penal Code § 2.04(d); *Madrid v. State*, 595 S.W.2d 106, 118 (Tex.Cr.App.1980), nor present expert medical testimony of sanity to counter defense experts. *Graham*, 566 S.W.2d at 950. The issue of sanity is a fact question, and the trier of fact may believe or disbelieve experts or lay witnesses. *Wade v. State*, 630 S.W.2d 418, 419 (Tex. App.—Houston [14th Dist.] 1982, no pet.).

The evidence in our case shows that appellant was placed on probation in February, 1985. His probation officer, Mrs. Ward, had a degree in sociology with a minor in psychology as well as previous work experience in the mental health field. In her opinion, appellant was doing well on job referrals by following through and making timely appearances. Based upon their 18 to 19 visits, she found appellant to be coherent, although occasionally resistant to procuring employment. When she broached this subject at their previous meeting, he had become more hostile and stated that it was impossible to find work. She thought, however, he was improving in his performance as a probationer. She had never seen him exhibit the type of behavior that he exhibited on the day of this offense, and although he had become angry on occasion, his behavior had always been appropriate. In her opinion, appellant attacked the elderly man because he was angry at her but realized that it would not be prudent to attack his probation officer or the two young men in the office. Upon cross-examination, Mrs. Ward testified concerning notes detailing appellant's abnormal behavior in the months before the offense as well as his previous suicide attempts and his psychiatric hospitalization. She also affirmed that appellant was being kept in a cell with no clothes or bed linens because he had set fire to the mattress and had attempted to hang himself. However, Mrs. Ward remained firm in her opinion that she thought appellant knew what he was doing and made several decisions "as to what was appropriate in what setting." Although she ultimately agreed that a rational person would not have asked to be incarcerated, she stated that he was in control of his behavior in her office immediately prior to the offense.

Kathryn Walker, the Chief of the Adult Probation Office in Hill County, was also present in the office during appellant's visit just prior to the assault in question. She had a degree in psychology, was formerly a behavioral science specialist and mental health therapist in the United States Army, and had worked on a behavior modification program at a state hospital. She had frequently observed appellant and had several conversations with him. She observed no severe mental defect or disease exhibited, and she described his problems as emotional rather than mental-illness oriented. She based this conclusion upon the fact that appellant made timely appearances at his appointments, followed instructions "very capably" in seeking jobs, knew where he was and whom he was talking with, and controlled himself in a normal fashion. She was of the opinion that he was manipulative in trying to avoid work and observed that the closer he came to obtaining employment placement, the more he reported that his mind was "bothering" him. She did not perceive him as a threat to anyone at the time of his visit just prior to the assault.

Appellant was also examined by three medical experts. Two reported that he was mentally incompetent at the time of the offense; the other was uncertain. Dr. Morris reported that appellant had attempted suicide three times and also referenced other prior abnormal behavior and psychiatric hospitalization. He observed that appellant, though remorseful, could not explain his behavior toward the complainant. Dr. Morris concluded that appellant was "most likely psychiatrically impaired at the time of his alleged crime." He considered appellant "to have been with 'mental illness' and psychotic during the episode" based upon the bizarreness and lack of consideration for his crime and the lack of attempt to escape punishment. He referenced appellant's long psychiatric history and the fact that it was not traditionally violent toward others but rather toward property in an equally bizarre manner. He noted that appellant had apparently discontinued his medication just prior to the incident and "as is typical in severe Schizophrenia, when one does so, one becomes psychotic within one to two weeks." Appellant's was a "fairly classical example." In summary, Dr. Morris found appellant to be mentally incompetent at the time of the offense and unable to control his behavior to a degree consistent with the rational and legal considerations for such. Dr. Johnson also detailed appellant's psychological history and concluded that appellant suffered from a schizophrenic disorder. In his opinion, appellant was "aware that the offense was wrong ... but did not have sufficient control to modify his behavior at the time due to noncompliance with his medical regimen (of his own accord)." Dr. Stidvent also interviewed appellant and reported appellant's version of the incident along with his psychological background. He concluded that appellant was "mentally ill", had "evidence of schizophrenia," and required psychiatric hospitalization, but that "it [was] hard to say whether or not he was insane at the time of the alleged offense." He also concluded that appellant could benefit from psychiatric hospitalization and needed to be continued on medication.

Appellant testified that he felt he was better now and could conform his behavior to the requirements of society. He had no real explanation for the incident other than his mind had been in a "wreck" and that he felt "bad" in the days before the attack. Appellant could not recall asking Mrs. Ward to put him in jail, but testified that he did want to be "locked up" at the time either in jail or in a hospital so that he could begin to feel better. He repeatedly stated that before the attack he was not mad at anyone except possibly himself for being "sick." He testified that he was nervous, upset, depressed and had previously ingested brake fluid and poison. He testified that he left Mrs. Ward's office crying and was drawn to the broom like a "magnet." He stated that he had not planned to hit anyone, but that when the man walked toward him he thought the man was going to attack him and he became scared. Appellant concluded that, at the time, he was insane. He did affirm that he now knew his actions to be wrong and was remorseful.

Finally, upon appellant's motion, the court took judicial notice of the testimony of the jail administrator from the previous trial regarding appellant's abnormal behavior in jail following his arrest and his suicide attempts.

██ The issue of insanity is not strictly medical, and expert witnesses, although capable of giving testimony that may aid the fact-finder in its determination of the ultimate issue, are not capable of dictating determination of that issue. *Graham,* 566 S.W.2d at 949. Ultimately, the issue of insanity at the time of the offense lies in the province of the fact-finder, not only as to the credibility of the witnesses and weight of the evidence, but also as to the limits of the defense itself. *Id.* at 952. In the case before us, although two medical experts diagnosed appellant as insane at the time of the offense, their observations were made several months after the offense. Expert testimony, even if uncontradicted, does not establish insanity as a matter of law. Such unrebutted testimony

only raises an issue of fact to be resolved by the trier of fact. *Guidroz v. State,* 679 S.W.2d 586, 588–89 (Tex.App. 4 Dist.1984, pet. ref'd). *See also Madrid,* 595 S.W.2d at 118. Here, two lay witnesses who had training in psychology and mental illness made observations of appellant minutes before the offense and testified that he was in control of his behavior and suffered from emotional problems rather than mental illness. *See Graham,* 566 S.W.2d at 951; *Guidroz,* 679 S.W.2d at 588–89. In light of all of the evidence, we hold that the trial court was entitled to find against appellant on the defense of insanity. Appellant's first point of error is overruled.

■ In his second point, appellant complains of the admission into evidence of his confession. The record reflects that prior to the taking of any statement, appellant was given his *Miranda* [1] warnings, which he appeared to understand. Appellant appeared "talkative" during the half-hour interview and "admitted to it right up front." Appellant never invoked any of the rights explained to him and never asked for an attorney. A written statement, prepared by an officer, was then signed by appellant. In the officer's opinion, the statement was given freely and voluntarily and appellant was not promised anything, threatened or coerced. At trial, appellant's objection that the entire subject matter was irrelevant and incompetent because appellant was insane at the time of the offense was overruled. The officer who took the statement later testified that appellant was coherent at the time of the statement "except for still being in an angry mood." He also testified that there was no communication problem between them. We conclude that the record supports that appellant was duly warned about and understood his legal rights surrounding the confession; that he knowingly, intelligently and voluntarily waived such rights; that the confession was freely and voluntarily given; and that appellant was mentally competent to make the statement. *See Humphrey v. State,* 646 S.W.2d 949, 951 (Tex.Cr.App.1983);

*Sutton v. State,* 644 S.W.2d 506, 510 (Tex. App.—Eastland 1982, pet. ref'd). Appellant's second point of error is overruled.

The judgment is affirmed.

---

1. *Miranda v. State of Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1956).