

In The
Court of Appeals
Seventh District of Texas at Amarillo

No. 07-15-00123-CR

JESTIN ANTHONY JOSEPH, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the Criminal District Court 4
Tarrant County, Texas
Trial Court No. 1343359D, Honorable Michael Thomas, Presiding

March 28, 2017

MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Appellant, Jestin Anthony Joseph, appeals his conviction, following a bench trial, of the offense of aggravated robbery with a deadly weapon[1] and the resulting sentence of twelve years of imprisonment.[2]  We will overrule his two appellate issues and affirm the trial court's judgment.

---

[1] TEX. PENAL CODE ANN. § 29.03 (West 2013).

[2] The record shows appellant had previous convictions, including a prior conviction for aggravated assault with a deadly weapon in which appellant hit a sixteen-year-old male.

## Background

At appellant's bench trial, the State presented evidence, including surveillance videos, showing that Davage Armstrong and his seven-year-old son were in a McDonald's in Fort Worth. Armstrong was talking on his cell phone. A man later identified as appellant entered the restaurant and requested a cup for water. He walked to the drink area and took a pistol from his pocket. He walked back to the counter and pointed the gun at Armstrong's face, asking Armstrong for his keys and some money. Appellant pulled the trigger several times but the gun did not fire. Armstrong pushed appellant against a wall and was able to get away from him.

Appellant held his gun in the air and yelled at other customers, demanding their keys. He then left the restaurant. Armstrong ran outside to look for his son[3] and saw appellant discharge his gun. No one was shot. Appellant came back inside, again chasing after Armstrong. Appellant tried to discharge the gun again but it did not fire. Appellant eventually left the McDonald's on foot. He shot toward at least one car on his way out. He threw the pistol off a bridge,[4] and shortly was arrested without incident on a freeway entrance ramp. During his subsequent interview by police, he appeared confused over why he was being questioned. Psychologists testified he suffered from schizophrenia.

---

[3] Armstrong shortly located his son, hiding in the restroom.

[4] The .380 Bersa pistol was recovered from the area under the bridge. A laboratory report of its examination said the pistol was capable of discharging cartridges in the condition received but had "mechanical abnormalities."

Analysis

On appeal, appellant first argues the trial court improperly found him guilty of the charged offense because he did not know his conduct was wrong. Relatedly, appellant argues in his second issue that because he did not know his conduct was wrong, he did not have the necessary *mens rea* to be guilty of aggravated robbery with a deadly weapon.

Issue One—Evidence Sufficient to Support Court's Finding Appellant Knew His Conduct was Wrong

In Texas, a defendant is excused from criminal responsibility if he proves, by a preponderance of the evidence, the affirmative defense of insanity. *Ruffin v. State*, 270 S.W.3d 586, 592 (Tex. Crim. App. 2008). The test is whether, at the time of the conduct charged, the defendant, as a result of a severe mental disease or defect, did not know that his conduct was "wrong." *Id.* Under Texas law, "wrong" in this context means "illegal." *Id.* (citing TEX. PENAL CODE ANN. § 8.01(a) ("It is an affirmative defense to prosecution that, at the time of the conduct charged, the actor, as a result of severe mental disease or defect, did not know that his conduct was wrong")). "Thus, the question for deciding insanity is this: Does the defendant factually know that society considers this conduct against the law, even though the defendant, due to his mental disease or defect, may think that the conduct is morally justified?" *Id.*

The defendant has the burden to establish an affirmative defense by a preponderance of the evidence. TEX. PENAL CODE ANN. § 2.04; *Matlock v. State*, 392 S.W.3d 662, 666 n.5 (Tex. Crim. App. 2013); *accord Butcher v. State,* 454 S.W.3d 13, 20 (Tex. Crim. App. 2015). When an appellant contends the finder of fact had insufficient evidence to support its rejection of an affirmative defense, we apply the civil

standards of review. *Matlock*, 392 S.W.3d at 669-71. Thus, when the appellant asserts the evidence was legally insufficient, appellate courts first review the record for a "scintilla of evidence favorable to the factfinder's finding and disregard all evidence to the contrary unless a reasonable factfinder could not." *Butcher,* 454 S.W.3d at 20, citing *Matlock,* 392 S.W.3d at 669-70. If the court finds not even a scintilla of evidence supports the factfinder's decision to reject the affirmative defense, it next considers whether the affirmative defense was established as a matter of law. The factfinder's rejection of an appellant's affirmative defense may be overturned for lack of legally-sufficient evidence only if the appellant establishes that the evidence conclusively proves the defense, and "no reasonable [factfinder] was free to think otherwise." *Id.* (citation omitted).

We may sustain an appellant's challenge to the factual sufficiency of evidence supporting a negative finding on his affirmative defense only if we find the verdict "is so much against the great weight of the evidence as to be manifestly unjust, conscience-shocking, or clearly biased." *Butcher,* 454 S.W.3d at 20; quoting *Matlock,* 392 S.W.3d at 671. To support such a finding, our analysis must consider all the evidence in a neutral light, and must set out the relevant evidence supporting the verdict and clearly state how the contrary evidence greatly outweighs the supporting evidence. *Id.* Where conflicting evidence on the issue of insanity is presented, determinations regarding the weight and credibility of that evidence should be resolved by the fact finder, and we defer to those decisions, because the fact finder has the benefit of observing the witnesses' actions and demeanor. *Lantrip v. State,* 336 S.W.3d 343, 348 (Tex. App.—Texarkana 2011, no pet.).

4

Expert testimony, even if uncontradicted, does not establish insanity as a matter of law. *Delacruz v. State,* No. 05-12-01354-CR, 2014 Tex. App. LEXIS 617, at *4-5 (Tex. App.—Dallas Jan. 21, 2014, no pet.) (mem. op., not designated for publication), citing *Brooks v. State*, 719 S.W.2d 259, 262 (Tex. App.—Waco 1986, pet. ref'd). While expert testimony may be helpful to a finder of fact, the issue of insanity is not strictly medical; the ultimate issue of criminal responsibility is beyond the province of medical experts and must be left to the discretion of the trier of fact. *Id.* (citation omitted). The circumstances of the offense, the life experiences of the accused, and his actions before and after the crime are relevant in determining sanity at the time of the offense. *Id.* at *5 (citation omitted).

Addressing appellant's issue, our initial inquiry is whether the record contains a scintilla of evidence to support the trial court's rejection of appellant's insanity defense. *Butcher,* 454 S.W.3d at 20; *Ruffin,* 270 S.W.3d at 592. We agree with the State's contention that legally sufficient evidence is present.

Two psychologists testified at trial, one on behalf of the State, the other for appellant. The doctors agreed on many significant aspects concerning appellant, differing only in their conclusions with regard to the effect of appellant's mental illness on his knowledge that his conduct was wrong when he committed the offense.

Dr. Christine Reed testified for the State, describing her testing of appellant and her diagnosis, that being "unspecified schizophrenia spectrum and other psychotic disorder." She noted also appellant's "cannabis abuse and anti-social behaviors" as well as his use of other drugs and alcohol. She told the court appellant had "demonstrated with a history of paranoia, delusions, believing that various groups were

5

following him, chasing him, pursuing him, sending him special messages trying to harm him." Despite Reed's opinion that appellant has a mental illness, she nevertheless concluded, "there was no reason to believe that he did not know what he was doing was wrong" and thus, appellant was legally sane at the time of the offense.

Explaining her conclusion, Reed told the court that her investigation revealed that at the time of the offense, appellant had been "on the run" for several days. Reed testified appellant told her he entered McDonald's believing he was being chased and he thought Armstrong's use of a cell phone was some kind of "signal" so he pointed the gun at Armstrong. Appellant also told Reed he chased Armstrong through the restaurant, pointed the gun at other customers, and demanded their keys for the purpose of fleeing because he was afraid for his life. But evidence shows that rather than fleeing, appellant stayed, an action Reed testified was inconsistent with his stated beliefs. Reed noted for the court that appellant kept returning to the restaurant and threatening customers and staff with his gun. When he finally left, he shot at a vehicle. Reed testified appellant later told police that at the point of shooting the car, "he knew he had messed up and he wanted to get out of there as quickly as possible." The record also indicates appellant said, "I f*cked up the minute I did that sh*t . . . ."

Reed noted also that while appellant said he believed the police were going to kill him, he threw his only weapon off the bridge, conduct Reed thought "sounded more like an act of someone that wanted to hide the evidence." Too, appellant initially denied knowledge of the weapon. Reed further noted that some witnesses said appellant ran faster when pursuing officers came closer. And, he ultimately stopped, got down on his knees, and put his hands behind his back. He complied with police directions "immediately." Appellant also made a statement to police that he had a probation

6

revocation in another county and was "already going down anyways,"[5] a statement Reed believed sounded "like he knew he was in trouble for something."

Dr. Emily Fallis testified on appellant's behalf, and expressed agreement with many of Reed's conclusions. Fallis first described the testing she conducted on appellant. She then told the court of her conclusion appellant "suffers from a serious mental illness and my diagnosis is schizophrenia, paranoid type." She expressed the opinion appellant had functioned well until early 2013, when his girlfriend became pregnant. Fallis discussed appellant's deteriorating behavior and described information from appellant indicating he found special messages in movies, numbers and colors and had religious visions, thinking at times he was Jesus.

Fallis testified appellant's behavior at the restaurant was consistent with his delusional and paranoid beliefs that people were after him. She expressed her opinion appellant did not know that what he did at the McDonald's was wrong.

In explaining her opinion, she testified:

I take into consideration his behavior before, during, and after. I certainly looked at the reports of witnesses and the police reports as well as the things that Mr. Joseph told me. And I do think the most consistent description of him during that whole time is that he was not thinking rationally, he was making decisions impulsively and they were based on his false beliefs that others were wanting to hurt him.

I think that that was what was motivating his behavior in leaving Denton, leaving Allen, leaving Dallas and then wandering around Fort Worth trying to find some place safe. I think he felt very threatened while he was in McDonald's and felt like that the people around him wanted to hurt him. And I think his idea was, I need to get away from here. Again, consistent with what he had been doing, which is trying to flee from the sources of threat and harm for him.

[5] One of the responding officers agreed he remembered that after appellant told him his name and date of birth, appellant said he "had a revocated probation out of Collin County; that's cool, I was already going down anyway."

7

I also think his behavior afterwards when he [leave] McDonald's and he's still feeling paranoid, he's operating under these delusional beliefs that people want to hurt him and he's misinterpreting signs and signals everywhere he looks. I think, again, he was still trying to keep himself from getting hurt, keep himself from getting killed.

Fallis agreed that in her written report, she stated: "In [appellant's] extreme delusional state, he did not think he was doing anything wrong in protecting himself and attempting to escape from those who were about to kill him." Fallis also discussed six factors often utilized to determine insanity. She concluded, "five of [the factors] clearly point to [appellant] having been unable to appreciate wrongfulness at the time of the offense." With regard to appellant's statements to police that Reed found significant, indicating appellant knew he "f*cked up" and that he was "going down anyways" Fallis testified appellant could have had a moment of "rationality within [the] larger period of irrationality."

Both psychologists agreed appellant made a number of statements to police that illustrated his illogical thinking. Among those were expressions of appellant's belief that officers were going to beat him and were trying to kill him. Appellant's sister testified to appellant's "frantic" behavior and unusual paranoid statements made prior to the offense. Appellant's mother testified similarly and also told the court of appellant's father's illness and the similarities in his and appellant's behavior. And, some witnesses from the restaurant told police appellant appeared disoriented, confused, and "not all there."

Armstrong noted appellant's hand was "steady" when he pulled the gun and aimed it at him. A responding officer testified appellant immediately complied with police instructions and provided his name and date of birth. The officer did not recall

8

that appellant exhibited unusual behavior or demeanor and did not recall any unusual statements. The officer also said appellant did not give him the impression he was in fear of his life.

We perceive no reason the trial court could not have found Dr. Reed's testimony, and the facts she cited to support it, probative to defeat appellant's contention he did not know, when he pointed a pistol at Armstrong and pulled the trigger while seeking his keys, that he was engaging in conduct our society considers against the law. *Ruffin*, 270 S.W.3d at 592 (standard). The record thus contains legally sufficient evidence supporting the court's rejection of appellant's insanity defense. *Butcher,* 454 S.W.3d at 20; *see City of Keller v. Wilson*, 168 S.W.3d 802, 810-11 (Tex. 2005) (legal sufficiency review).

We find also the trial court's rejection of the defense was supported by factually sufficient evidence. Appellant threw his gun off the bridge, an action the trial court could have agreed with Reed showed appellant was trying to hide evidence of his crime. *See Dashield v. State*, 110 S.W.3d 111, 115 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (evaluating evidence of appellant's conduct surrounding offense); *Love v. State*, 909 S.W.2d 930, 943 (Tex. App.—El Paso 1995, pet. ref'd) (comparable analysis). The court could have seen the evidence of appellant's initial denial of knowledge of the gun and evidence of his attempt to avoid officers in the same light as indicating appellant was aware of the unlawfulness of his conduct. And appellant's statements to police acknowledging he knew he had made a mistake and was "already going down anyways" for his probation revocation in another county further support the court's verdict. The evidence supporting the trial court's rejection of appellant's insanity defense

was not "so much against the great weight of the evidence as to be manifestly unjust, conscience-shocking, or clearly biased." *Butcher,* 454 S.W.3d at 20.

Consequently, the trial court did not err in rejecting appellant's affirmative defense of insanity. We resolve appellant's first issue against him.

Issue Two—Evidence Sufficient to Support Trial Court's Finding Appellant Possessed Requisite *Mens Rea*

Appellant argues in his second issue that because he did not know his conduct was wrong, he could not have had the requisite *mens rea* to commit aggravated robbery with a deadly weapon.

Whether an actor possesses the requisite *mens rea* to commit a crime is an inquiry separate and independent from the inquiry whether his mental illness precluded his ability to discern right from wrong. Our resolution of appellant's first issue therefore does not mandate that we overrule his second issue. *See Ruffin,* 270 S.W.3d at 592 n.15.

The appellate court reviews the sufficiency of the evidence supporting essential elements of the offense by considering the evidence in the light most favorable to the verdict, and determines whether any rational trier of fact could have found, beyond a reasonable doubt, that the elements were present. *Brooks v. State,* 323 S.W.3d 893,895 (Tex. Crim. App. 2010) (plurality op.). The trier of fact, here the trial court, is the sole judge of the credibility of the evidence presented and the weight to be given it. *Brown v. State,* 270 S.W.3d 564, 568 (Tex. Crim. App. 2008). The appellate court presumes that the fact finder resolved any conflicting inferences in favor of its verdict, and defers to that resolution. *Clayton v. State,* 235 S.W.3d 772, 778 (Tex. Crim. App.

10

2007). So long as the verdict is supported by a reasonable inference, it is within the province of the fact finder to choose which inference is more reasonable. *Laster v. State*, 275 S.W.3d 512, 523-524 (Tex. Crim. App. 2009).

Aggravated robbery incorporates into its elements the offense of robbery. TEX. PENAL CODE ANN. § 29.03(a) (West 2011). The State's indictment alleged appellant intentionally or knowingly threatened or placed Armstrong in fear of imminent bodily injury or death. See TEX. PENAL CODE ANN. § 29.02(a)(2) (West 2011).

Armstrong testified that during their encounter, appellant once yelled, "You think I'm playing with you . . . ." Asked on cross examination what he thought appellant meant by the statement, Armstrong replied in part, "I felt like he was trying to do harm to me." He later agreed with the prosecutor that when appellant pointed the gun at his face and demanded his property, he was in fear of imminent bodily injury or death. Placing someone in fear of imminent bodily injury or death is a result of conduct. *Roach v. State,* No. 01-14-00392-CR, 2015 Tex. App. LEXIS 3834, at *16-17 (Tex. App.—Houston [1st Dist.] April 16, 2015, pet. ref'd) (mem. op., not designated for publication); *Gutierrez v. State,* 446 S.W.3d 36, 41 (Tex. App.—Waco 2014, pet. ref'd). The State satisfied its burden of proof of appellant's culpable mental state if the evidence permitted a rational finder of fact to conclude appellant had a conscious objective or desire to place Armstrong in fear of imminent bodily injury or death, or was aware that his conduct was reasonably certain to cause that result. TEX. PENAL CODE ANN. §§ 6.03(a), 6.03(b).

There is a presumption that a criminal defendant intends the natural consequences of his acts. *Ruffin,* 270 S.W.3d at 591. As with other elements of an

offense, relevant evidence may be presented which the fact finder may consider to negate the *mens rea* element. *Brown v. State,* No. 04-12-00813-CR, 2014 Tex. App. LEXIS 8189, at *12 (Tex. App.—San Antonio, July 30, 2014, no pet.) (mem. op., not designated for publication) (citing *Jackson v. State,* 160 S.W.3d 568, 574 (Tex. Crim. App. 2005)). This may include evidence of a defendant's history of mental illness, physical or mental diseases, or defects. *Id.* (citing *Jackson,* 160 S.W.3d at 574; *Ruffin*, 270 S.W.3d, at 593).

Dr. Fallis found appellant suffered from "schizophrenia, paranoid type," and Dr. Reed referred also to his schizophrenia and his history of "paranoia, delusions, believing that various groups were following him, chasing him, pursuing him, sending him special messages trying to harm him." *Cf. Jackson*, 160 S.W.3d at 570 (psychiatric testimony describing schizophrenia and paranoia). We have noted the evidence that appellant's conduct toward Armstrong was motivated by delusions. The testifying psychologists agreed appellant exhibited illogical and irrational behavior, as well as impaired thinking in his actions at the McDonald's.

Evidence that an accused's conduct was influenced by a condition of paranoia or schizophrenia does not preclude a finding he possessed an intentional or knowing culpable mental state. *Jackson*, 160 S.W.3d at 574-75 ("presenting evidence of mental illness does not then allow the defense to argue that the defendant is absolutely incapable i.e., does not have the capacity to intentionally or knowingly perform an act").[6]

---

[6] As the court discussed in *Ruffin,* commentators have noted that "persons crazy enough to be legally insane are not necessarily lacking *mens rea.* Even defendants who are most demonstrably legally insane rarely lack the *mens rea* for the highest charged offense." *Ruffin,* 270 S.W.3d at 592 n.15 (citations omitted).

Dr. Fallis's testimony emphasized appellant's effort "trying to get keys so that he could truly get away from people in a car." Fallis further testified appellant's "delusions . . . were the motivation for what he did . . . I think he was simply trying to find a way to get away from people who were wanting to hurt him. And the fastest way to do that was to get keys to a vehicle and leave." This evidence serves to explain the motivation behind appellant's actions toward Armstrong, but it does not suggest he lacked a conscious objective or desire to place Armstrong in fear of imminent bodily injury or death. Appellant's evidence thus does not negate his *mens rea.* Rather, like that in *Jackson*, it demonstrates appellant's strong desire to obtain Armstrong's keys, supporting an equally strong inference of his conscious objective or desire to place Armstrong in fear to accomplish his purpose. *See Jackson*, 160 S.W.3d at 572 (evidence of mental illness did not negate *mens rea* but presented an excuse for murder, "that [defendant] killed his brother because he was so paranoid that he thought his brother was out to get him"; such evidence "makes it even more apparent that [defendant] intended to cause serious bodily injury or death to his brother"). *See Brown*, 2014 Tex. App. LEXIS 8189, at *21-22 (also discussing negation of *mens rea*). Appellant's statement to Armstrong, "You think I'm playing with you . . . ," reinforces the seriousness of appellant's intent to place Armstrong in fear. The natural consequence of appellant's actions was to instill in Armstrong fear of imminent bodily injury or death. The law presumes appellant intended that natural consequence, and a rational trier of fact, having heard the evidence, could agree. The evidence of *mens rea* was sufficient to support appellant's conviction. We overrule his second issue asserting otherwise.

Conclusion

Having resolved each of appellant's issues against him, we affirm the judgment of the trial court.

James T. Campbell
Justice

Do not publish.